## RICHARDSON *v.* STATE.

### [85 South. 184. In Banc. No. 21096.]

1. HOMICIDE. *Evidence of deceased's good reputation inadmissible,
   where not attacked.*

   Upon the trial of one indicted for murder, evidence of the general
   good reputation of the deceased is incompetent, when the defend-
   ant had made no attack of any kind upon deceased's character.

2. CRIMINAL LAW. *Defendant's statement that accused tried to kill
   him held self-serving.*

   A statement by the accused to his wife a few minutes after the
   fatal shots were fired that, "Sheppard tried to kill me, and I
   shot him, is a self-serving declaration, and inadmissible.

3. HOMICIDE. *Words of reproach will not reduce murder to man-
   slaughter.*

   No mere words of reproach, however grievous or provoking, un-
   accompanied by any assault or mutual combat, are sufficient
   provocation to reduce an intentional and unjustifiable homicide
   from murder to manslaughter.

APPEAL from circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.

Jim Richardson was convicted of murder, and from a
judgment imposing the death penalty he appeals. Re-
versed and remanded for a new trial.

*Jno. W. Crisler* and *Chas. Crisler,* for appellant.

*H. C. Holden,* general for the State.

STEVENS, J., delivered the opinion of the court.

Appellant was convicted of the murder of one Jim Sheppard, a negro, and from the judgment imposing the death penalty prosecutes this appeal. The material facts in reference to the difficulty are as follows: On the evening of August 20, 1919, appellant, a married colored man came home from his work, found his wife absent, and no supper prepared. He claims to have been very much provoked because of the fact that this neglect of his wife had been repeated from time to time, and so about 8 o'clock, when his wife returned home, appellant proceeded to give his wife a whipping. The record shows that appellant beat his wife with a stick of stove wood. When the chastisement was over the wife came out on the front porch crying, and there Jim Sheppard, the deceased, addressed appellant, asking why he was beating "that woman just come from the hospital. Ain't you shame to beat your wife like that when she just came from the hospital? You ought to have more respect for your neighbors." Additional words passed between the appellant and the deceased, when appellant suddenly exclaimed, "It is my affair, and you have got nothing to do with it," at the same time pulling his pistol and shooting at Sheppard three times. Sheppard turned and walked a short distance away, and died without making any statement. Appellant immediately fled through and from the rear of his house, but the next morning, acting upon the advice of a friend, surrendered to the sheriff. As he went through the house the wife, who had in the meantime gone back into a room asked her husband, "What have you done?" And to this appellant replied, "Sheppard tried to kill me, and I shot him." No prior ill feeling, difficulty, or threats are in evidence. The colored citizens of the community appear to have taken much interest in the trial in the course of which certain demonstrations were made by the audience.

The court refused to grant an instruction submitting to the jury any issue of manslaughter, and this action of the court in refusing to grant a manslaughter instruction is assigned for error. Closely connected with this assignment is another, based upon the modification of instruction No. 21, which, as modified by the court, reads as follows:

"The court instructs the jury that you cannot find the defendant guilty, unless you believe beyond every reasonable doubt that the defendant killed the deceased with malice aforethought, premeditation, and deliberate design, formed beforehand, for the purpose of taking the life of deceased."

Complaint is also made of the refusal of the court to grant the following instruction:

"The court instructs the jury that the quarrel between the wife and the defendant and the blows which he struck her, or any evidence in connection with the same, is no evidence against the defendant, and must not be considered against him in making up your verdict."

The next assignment of error is predicated upon the action of the trial court in admitting evidence of the good character of deceased before and when the defendant had made no attack upon it. Complaint is also made of the exclusion from the consideration of the jury of the question propounded by the wife and appellant's response that "Sheppard tried to kill me, and I shot him." Assignments are also predicated upon the alleged separation of one juror from his fellows, upon the alleged fact that two of the jurors read newspapers, and upon the alleged error of the court in not cautioning the jury against being influenced by demonstrations by the audience.

We shall first consider the action of the court in permitting the district attorney to introduce many witnesses supporting the good character of the deceased as a peaceful citizen when the accused had made no attack

of any kind on the character of the deceased. In the consideration of this assignment it should be stated that appellant relied upon the plea of self-defense, and in support thereof testified that Sheppard, in upbraiding appellant for whipping his wife, made a movement as if to draw a pistol from his pocket, and that appellant, believing his life was in danger, hurriedly shot the deceased three times in rapid succession. Furthermore, from all the testimony introduced on the trial the dedeased was an exceptionally good negro, bore a good reputation, and undoubtedly had the sympathy of the spectators who witnesses the trial. Under these circumstances it was error and highly prejudicial to the accused to permit evidence in support of the good character of Jim Sheppard. The authorities on the proposition are all one way. *Woods* v. *State,* 90 Miss. 245, 43 So. 433; case note, 3 L. R. A. (N. S.) 351; *Chase* v. *State,* 46 Miss. 638; Wharton on Homicide (3d Ed.), pp. 438, 439.

The only question is whether the error complained of amounts to reversible error in the case. Confining the inquiry and decision to the facts as presented by this record, we regard the error as damaging and prejudicial. The accused made no attack upon the character or general reputation of the deceased. The accused was surrounded by a hostile audience. Under such a setting as this, the learned district attorney called witness after witness to bolster up the character of the deceased and bear testimony to his good name. This indorsement of witness after witness amounted to an appeal on their part for a conviction. If this were permitted in homicide trials, it would open a doorway by which prominent citizens might easily influence the verdict of juries. The jury have power to fix the punishment at life imprisonment, and we cannot say that this testimony was not prejudicial. For this error, and for this error alone, we must reverse the judgment of conviction and award a new trial.

The conclusion which we have reached on the one assignment discussed renders it unnecessary to comment upon or decide each separate assignment. In contemplation of a new trial we state without elaboration our conclusion upon those points, which the trial court must deal with afresh. We regard the statement which the accused made to his wife immediately after the shooting as a self-serving declaration and inadmissible. This evidence was properly excluded. A majority of the court are of the opinion that any instruction upon manslaughter would be erroneous, and that no error was committed in refusing to submit to the jury any alleged issue of manslaughter.

It is counsel's contention that appellant was very much provoked at his wife's neglect, so much so that he had just chastised her severely, and that, being mad or in a state of passion, he resented the voluntary interference of his neighbor in a family row, and is therefore only guilty of manslaughter. The error of this contention lies in the fact that no sufficient legal provocation came from the deceased. The latter was not responsible for the fact that appellant was mad at his wife, and the mere fact that appellant was mad is in no sense a justification for an outrageous murder of a third person. We understand the law to be that no mere words of reproach, criticism, or anger are sufficient provocation to reduce an intentional and unjustifiable homicide from murder to manslaughter. The rule is stated by Mr. Wharton as follows:

"Where the evidence shows an intent on the part of the defendant to kill, no words of reproach, no matter how grievous, are provocation sufficient to free the party killing from the guilt of murder; nor are indecent provoking actions or gestures expressive of contempt or reproach without an assault upon the person." Par. 455a, Wharton's Criminal Law (10th Ed.).

This point was under observation by our court in the early case of *Preston* v. *State*, 25 Miss. 383, where the court by Chief Justice SMITH said:

"A man might be subjected to great indignities, and be greatly provoked, and still not stand acquitted of murder, if he should instantly slay the aggressor."

The charge condemned in that case was also criticized because it left the character of the provocation for the determination of each juror. We do not regard the words employed by the deceased in the present case as a sufficient legal provocation, unless they had been accompanied by an assault or mutual combat. The deceased, one of appellant's closest neighbors, was criticising an act that was morally wrong. He had not, according to all of the testimony, assaulted appellant or based his criticism on any ill-founded reason.

The testimony as to the wife beating was competent, and constituted a part of one transaction out of which the tragedy arose Inasmuch as a new trial will be granted, it is unnecessary to comment upon any alleged hostile demonstrations by the audience or the question as to whether error was committed by the learned trial judge in failing to caution or instruct the jury to pay no attention to these manifestations of public feeling. In does appear that the judge made every effort to preserve order, and did in fact reprimand the audience. There was no special bill of exceptions to anything the trial judge did or failed to do in this regard.

For the reasons indicated the judgment of conviction will be set aside, and the cause remanded for a new trial.

*Reversed and remanded.*

SYKES, J. (specially concurring).

I agree that this cause should be reversed and remanded, but I disagree with the majority opinion that the defendant was not entitled to a manslaughter instruction

in this case. I think the jury under the testimony would have been justifiable in believing that the deceased, by interfering with the domestic affairs of the appellant, provoked the appellant to kill him in the heat of passion.

Ethridge, J., concurs in the view herein expressed.