## BLEVINS v. STATE.

(Division B. April 16, 1934.)

[154 So. 269. No. 30839.]

Roberds & Malone, of West Point, for appellant.

Wm. H. Maynard, Special Agent, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellant was indicted for the murder of one John Montgomery; convicted of manslaughter and sentenced to the penitentiary for a term of five years. From that judgment he prosecutes this appeal.

This was the second trial of the case. There was a

negro dance going on at night in a dance hall in the city
of West Point; the attendants at the dance, including ap-
pellant and the deceased, were all negroes. A fee of ad-
mittance to the dance hall was required to be paid, and
John Montgomery was the doorkeeper. It was his duty
as such to require all comers to pay the fee before being
admitted. Appellant and others came into the hall with-
out paying the fee and were evicted by Montgomery;
later some one threw a brick against the door of the dance
hall, Montgomery opened the door, then another brick
was thrown which struck him over the eye, fracturing
his skull. He developed tetanus from the wound and
died.

The issue of fact was, who threw the brick that caused
the wound. The evidence was conflicting.

Claud Hudson and Howard Cook were the principal
state's witnesses. They testified that they saw appellant
throw the brick that struck Montgomery.

The court refused to continue the case on motion of
appellant supported by affidavit, and this action of the
court is assigned and argued as error. On the former
trial of the case, Will Young, Isaiah Shields, and John
Erskine Wells testified that appellant did not throw the
brick which struck Montgomery; that at the time they
were talking to appellant under a bright street light
about sixty feet away from the dance hall door, and knew
that he did not throw the brick. Only one of these wit-
nesses was present at the last trial. Roosevelt Murray
testified on the former trial that the state's witness Hud-
son, at the time Montgomery was struck with the brick,
was in a house about seventy-five yards away engaged
in a crap game and could not have seen who threw the
brick. The motion for continuance was based on the ab-
sence of Will Young and Roosevelt Murray. In the af-
fidavit it was stated that the absent witnesses would tes-
tify to the same effect on another trial; that they resided
in West Point, the county seat of Clay county where the

trial was being held; that they were temporarily absent from the state; that subpoenas had issued for them, but they were not found on account of being out of the state; that appellant believed that their presence could be procured at the next term of court; and that he had used due diligence to procure their attendance at the term then in progress.

The action of the court in refusing the continuance was made a ground for motion for a new trial, which motion was overruled. There was no error in denying the continuance and overruling the motion for a new trial based on that ground. Appellant failed to show the required diligence. During the trial he should have, with unremitting efforts, continued to use the process of the court to procure the witnesses, and, after conviction, he should have persisted in his efforts to force their attendance before the expiration of the term, and on his motion for a new trial, if available, he should have presented the witnesses to the court for examination; and, if unable to have them personally present, he should, if practicable, have secured their ex parte affidavits showing the materiality of their testimony. Coward v. State, 158 Miss. 705, 131 So. 254, 257; Robertson v. State, 157 Miss. 642, 128 So. 772; Ivey v. State, 154 Miss. 60, 119 So. 507; Samuels v. State, 153 Miss. 381, 120 So. 920.

Appellant requested the following instruction, which the court refused in the form requested:

"The court charges the jury for the defendant that it is the sworn duty of every juror to vote on each and every ballot of the jury for an acquittal of the defendant until and unless after conferring with his fellow jurors, the mind of such juror is convinced beyond all reasonable doubt and to a moral certainty from the evidence of the guilt of the defendant, and that a juror under his oath as a juror cannot compromise his honest convictions from the evidence as to the guilt or innocence of the defendant for the purpose of bringing in a verdict, but that under

his oath and under the law a juror should never surrender such conviction from or because of anything or reason whatsoever or for any purpose whatsoever so long as his conviction after consultation with his fellow jurors remains.''

· The court modified the instruction so as to make it read as follows:

''The court charges the jury for the defendant that it is the sworn duty of every juror to vote for an acquittal of the defendant until and unless after conferring with his fellow jurors, the mind of such juror is convinced beyond all reasonable doubt and to a moral certainty from the evidence of the guilt of the defendant, and that a juror under his oath as a juror cannot compromise his honest convictions from the evidence as to the guilt or innocence of the defendant for the purpose of bringing in a verdict, but that under his oath and under the law a juror should never surrender such conviction from or because of anything or reason whatsoever or for any purpose whatsoever so long as his conviction after full and free consultation with his fellow jurors remain.''

It will be noted that the court struck out this language in the first part of the requested instruction ''on each and every ballot of the jury,'' and added ''full and free'' in the latter part of the instruction following the word ''after'' and preceding the word ''consultation.'' We do not think the changes made in the instruction by the court altered its meaning. In other words, the instruction requested and the one offered by the court were the same in all substantial respects.

Howard Cook testified for the state on both trials. When the last trial took place, he was in the penitentiary for some crime. On his cross-examination it developed that he had signed an affidavit between the two trials and while in the penitentiary. This affidavit, if true, was an admission that he had sworn falsely on the former trial. The witness admitted that he signed the affidavit,

but stated that he did not know its contents—that it was not read to him. Appellant offered the affidavit in evidence as part of the evidence of this witness. The court ruled it out upon the ground that up to that stage of the trial it was not shown that the witness knew what was in the affidavit when he signed it. This act of the court is assigned and argued as error.

Dr. Hughes, who was an employer of appellant and procured the affidavit in question in the interest of appellant's defense, was put on the witness stand by appellant. By him appellant proved the genuineness of the affidavit; and that the witness Cook made it and' knew its contents. In connection with his testimony appellant was permitted to introduce the affidavit in evidence. Appellant claims that his rights were prejudiced by being forced to introduce the affidavit through the friendly testimony of Dr. Hughes, and because it was developed in Dr. Hughes' testimony that on the former trial of this case appellant had been convicted. Dr. Hughes testified that in securing the affidavit his purpose was to procure appellant's pardon for the former conviction. We do not think there is any substantial merit in these contentions. Appellant put Dr. Hughes on the witness stand and on direct examination brought out the fact that appellant had been convicted on the former trial of the case.

Appellant assigns and argues as error the giving of a manslaughter instruction for the state. The ground of the argument is that the evidence shows conclusively that appellant was either guilty of murder or innocent. There is no merit in this contention. In a case where the evidence is sufficient to convict of murder, a defendant cannot complain of a conviction of manslaughter. Goss v. State, 144 Miss. 420, 110 So. 208; Alexander v. State, 145 Miss. 675, 110 So. 367; Blalock v. State, 148 Miss. 1, 113 So. 627; Samuels v. State, 153 Miss. 381, 120 So. 920; Calicoat v. State, 131 Miss. 169, 95 So. 318; Strickland v.

State, 131 Miss. 169, 95 So. 318. The decisions of our court holding to the contrary have been overruled.

There was no error in denying a new trial on the ground of newly discovered evidence. The affidavit setting out the names of the witnesses and what they would testify to was sworn to by appellant alone. Under the law both appellant and his attorneys are required to make affidavit that they did not know of the facts during or before the trial. This was not done. Grady v. State, 158 Miss. 134, 130 So. 117. Furthermore, the testimony of the absent witnesses was for the purpose alone of impeaching that of the state's witness Cook. Newly discovered impeaching evidence is not ground for a new trial. Steward v. State, 154 Miss. 858, 123 So. 891.

Affirmed.