SIMMONS *v.* STATE.

In Banc. May 9, 1949.

(40 So. (2d) 289)

536

J. A. Wiltshire and Roach & Jones, for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

Smith, J.

The grand jury of Amite County jointly indicted appellant, Johnny Harris, James and Cecil Rucker for the alleged murder of Jim Gooden. Appellant obtained a severance, was tried, convicted of manslaughter, sentenced to twenty years in the penitentiary, and appealed to this Court. At the trial, appellant being unable to employ counsel, the court appointed two members of the Bar to defend him.

The first assignment of error deals with two motions for a continuance because of the absence of a witness, who was beyond the jurisdiction of the State. The court properly overruled this motion. Attorneys did not exercise the persistence and diligence required by Lamar v. State, 63 Miss. 265. See also Cox v. State, 138 Miss. 370, 103 So. 129; Ivey v. State, 154 Miss. 60, 119 So. 507; Blevins v. State, 169 Miss. 868, 154 So. 269; and more recent decisions of this Court.

Also assigned as error is that the court "erred in trying to define a reasonable doubt to the jury on its voir dire examination." We have several times condemned efforts to define "a reasonable doubt." This definition was that "reasonable doubt must be of the type that you can give a reason for when you get back in the jury room and discuss the matter, and if you have a doubt in your mind and some fellow jurors asks you if you have a doubt, you will be able to give your reasons for having entertained such doubt." Aside from being

erroneous as a definition, the trial judge, in our opinion, should not have attempted here to instruct prospective jurors as to the meaning of reasonable doubt. In Boutwell v. State, 165 Miss. 16, 143 So. 479, 483, we said: "Reasonable doubt defines itself; it therefore needs no definition by the court." Since then, we have also further condemned efforts of trial courts to define "reasonable doubt."

■■ The State, over objection of appellant, and at a time when no proof had been offered by him as to the reputation of deceased for peace or violence, introduced testimony that such reputation of deceased was good. This was "highly improper" in this case. Woods v. State, 90 Miss. 245, 43 So. 433; Richardson v. State, 123 Miss. 232, 85 So. 186.

Complaint is made by appellant that the State was permitted to make proof of a purported dying declaration, under such circumstances as did not bring such declaration within the rule permitting it. ■■ Deceased was lying in the road at the scene of the tragedy, and two witnesses for the State testified he said to them, "They hit me with the binders, they pushed me off the truck." Neither witness claimed that deceased made any statement indicating on his part that he knew or believed death was then and there imminent and impending. One witness said that he himself knew it, and that the dying man should have known it. That is not the test. The true test is that "at the time the declaration was made, the deceased believed that he was going to die and had no hope whatever of recovery, it must be made under the realization and solemn sense of impending death." Syllabus McNeal v. State, 115 Miss. 678, 76 So. 625. Even if, at the hospital forty-five minutes later, the dying man said he knew he was going to die, said declaration was after the so-called dying declaration, and hence incompetent. The conviction of impending and imminent death must, in point of time, be present when the statement is made, and a subsequent belief will not relate

back to make earlier statements competent. The court erred in admitting this testimony.

The testimony of these two Negro witnesses is far from persuasive. They vacillated between statements that deceased was conscious and that he was not. Dr. Fields testified that he was not conscious when he reached the hospital, never became conscious thereafter, and the nature and location of injuries indicated he was rendered almost immediately unconscious. That being so, he could not have made any conscious statement.

 Appellant was prejudiced by the improper admission of a confession undoubtedly obtained by duress and improper influences, as frankly revealed in the honest testimony of the sheriff. He said he was convinced appellant and his fellows were lying, and he thereupon told them "if they didn't quit lying I might beat hell out of them". Earlier, he had been asked this question: "Did you attempt to upset them as to what might happen if they didn't tell the truth?" To which the sheriff answered, "I did, kind of, a little bit." The effect of the sheriff's threat was to persuade appellant that he must tell it like the sheriff believed it to have occurred, although up to that time appellant had steadfastly denied his guilt. Furthermore, appellant's confession was induced, apparently, by additional pressure from his accomplices in the form of promised friendly assistance in the form of bail. On this promise they double-crossed him, and he was unable to make bond as promised. The confession was inadmissible. Clash v. State, 146 Miss. 811, 112 So. 370; White v. State, 129 Miss. 182, 91 So. 903, 24 A. L. R. 699; Johnson v. State, 107 Miss 196, 65 So. 218, 51 L. R. A., N. S., 1183; Whip v. State, 143 Miss. 757, 109 So. 607.

Incidentally, in his testimony, the sheriff, without objection, told the jury what others said to him, not in the presence of appellant, about the facts of the case. Especially was this true as to the prosecution's star witness, Robinson. We refer to this merely because it

should not be repeated in the new trial which we are granting, since it was let in without objection by appellant. The only way such evidence could become competent would be its use to contradict the persons quoted, including Robinson, after proper predicate laid for that purpose.

Appellant requested a directed verdict at the conclusion of the State's evidence, which was overruled, but he waived any error therein by putting on his proof. However, at the close of all of the testimony, he renewed the motion, which was likewise overruled. Appellant also made a motion for a new trial, which, too, was overruled.

On a Sunday, the four indicted men, including appellant, were riding the cab of a truck over the countryside. On the back of the truck, to which was attached a trailer, the deceased, Goodin, and a Negro named Robinson, were riding. In the course of their driving, they came to, and tarried awhile at, New Hope Church. From there, they drove to the scene of the fatal injury to Goodin,—which was approximately two hundred yards from the church, and down a hill. One of the Negroes told the driver of the truck to turn around there and take one of the parties to Gloster. Several witnesses said that going down this hill they saw the deceased and Robinson in the back of the truck, and the four others in the cab; and that just a short while later, when the truck came back up the hill, the same four men were in the cab, but Robinson alone was in the back, and Goodin was gone therefrom. He was pushed or thrown off, apparently, either by the bolster, when the truck turned around; or by someone in a position to do so. The appellant and the three other men in the cab were not so situated as to be able to do it. This appears necessarily established by the evidence, unless Robinson's bizarre, substituted second version as to how it occurred be accepted, which statement would exonerate himself and involve appellant. The bleeding body, shortly thereafter was found in the road where the truck

turned around. Robinson first told the sheriff "They were in a truck with a trailer behind, and they went to back out to turn around and the trailer cut short around and pulled the bolster around, and . . . Jimmie (the deceased) was drug off with the bolster when it come around short."

On the trial, Robinson told an entirely different story as to the occurrence. He said a Negro, nicknamed "Rat" "came along in a car, and they had the truck in the middle of the road, and he said for them to let him pass and they pulled up a little side road there. . . . Then Johnnie Harris and John Simmons (appellant) told me to get in the cab and I got in the cab and they was back there, and he was backing out and I heard Jimmie say 'Oh! Lord, don't hit me,' and I seen John Simmons hit him with the binders, come down on his head with it." He further testified that appellant struck only one blow.

Dr. Fields, the attending physician at the hospital, said this about Goodin's condition upon admission there: "Upon admission he was very near the point of death, didn't respond to stimulants whatever, completely unconscious and had blood coming from his nose, mouth and his right ear, with a deep lacerated wound in the right jaw, compound fracture, the right side of his face was badly contused, his right eye was practically closed with edema, a three or four inch lacerated wound on the right chest and shoulder and a deep lacerated wound extending entirely around from the outside to the inside under his right knee, it was deep, through to the bone with the vessels showing."

Robinson testified that the truck ran over Goodin, as indeed it must have, because no ogre, Cyclops, Goliath, or Brobdingnagian could have produced such severe multiple wounds with one blow on a man's head, even with a log binder. Furthermore, appellant had had no quarrel or previous difficulty with Goodin, and, apparently, as far as is reflected in this record, none of the others had. Appellant testified that Robinson, after the turn around,

told him and his companions in the cab, that deceased had fallen off the cab, and been run over. Thereupon, the truck was stopped momentarily and then, they, being scared, drove away.

Were it not for the failure thereafter of appellant satisfactorily to account for this failure to stop, and see about Goodin, both himself and his associates in the cab, we possibly would be inclined to reverse the judgment of the trial court on the facts, and discharge appellant. We, however, have concluded to reverse and remand for a new trial, since, in our judgment the verdict is against the overwhelming weight of the believable evidence, after the elimination of the alleged dying statement, and the confession.

Robinson was not indicted. He is kin to the alleged accomplices of appellant, but not to appellant.

In view of what we have said, supra, the judgment of the trial court is reversed and the case remanded for a new trial, free from the errors pointed out herein.

Reversed and remanded.