413 So.2d 725 (1982)
John Henry ANDERSON a/k/a June Anderson
v.
STATE of Mississippi.
No. 53096.
Supreme Court of Mississippi.
May 5, 1982.
*726 T.H. Pearson, Clarksdale, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC:
DARDEN, Justice, for the Court:
John Henry Anderson was convicted in the Circuit Court of Coahoma County on a charge of uttering a forgery and was sentenced to a term of twelve years in the Department of Corrections. We affirm.
The testimony of three of the state's witnesses showed that John Henry Anderson went into a family grocery store with a check and that he presented certain purported identification to the store manager and that the check was cashed. He had been in earlier and the manager refused to cash the check because he did not then have any identification. The check was a Social Security check which was the property of Eddie M. Williams and the testimony of two of the witnesses was that Anderson endorsed it with Williams' name. The third witness saw Anderson give the check to the store manager but did not state whether or not she saw him endorse the check. A fourth witness for the state identified Anderson as having come into the store at the time the alleged utterance of the forgery took place but stated that she did not see the check, the identification, nor hear any of the transaction relating to the check itself.
Anderson did not deny being in the store when the check was presented for cashing to the manager. His version of the event was that he had picked up another person, whom he knew by the name of Boone and that Boone was the one who had the check and who was showing the purported identification. Anderson said he then left the store "to shield myself out of it." The man Boone came out of the store and undertook to get a further ride with Anderson but Anderson turned him down and Boone paid Anderson two dollars for having brought him to the store from another neighborhood.
It was reported to the police that Eddie Williams' Social Security check was missing and she testified she had not written the endorsement of her name on the check, which was taken without her permission. The police went to the grocery store where Anderson purportedly uttered the forged endorsement, and inquired about whether they had the check. The store manager told him that they did. He asked for a description of Anderson which was given to him and he subsequently took what was called a mug book, that is to say a book of pictures, to the store and the manager and her son, who was present at the time that the check was delivered to the store manager, identified Anderson from the mug book and said they would prefer to see him in person to make the identification positive.
On the next morning Anderson was arrested on a warrant which the police officer had obtained and was taken to the jail. He was given his Miranda rights, according to the police officer, both at his residence where he was arrested and later at the jail *727 to which he was taken. He denied that he was "read his rights." He was fingerprinted and specimens were taken of his handwriting apparently for comparison with the endorsement on the check. At that time he demanded that he be given a lineup. He was asked if he had an attorney or wanted one and he said that he wanted his mother to get in touch with an attorney but that he wanted an immediate lineup. The police then arranged for a lineup using persons of the general description of Anderson both in height and coloration and brought in the store manager and her son, both of whom identified Anderson by the number that he held. There were five persons in the lineup, four besides Anderson, and the identification was made positively, and the testimony indicates separately, by the store manager and her son and the testimony showed without contradiction that there was no prompting or effort on the part of the police officers to identify Anderson in the lineup, or otherwise influence those viewing the suspect.
Anderson told the police officers, according to his testimony, that he had picked up the man that actually delivered the check to the store manager and that he knew his name and address but he would not disclose that information to the police officers unless they would promise to release and exonerate him. They told him that that was impossible since he was the one who was named in the warrant. It was only after he was instructed by the court to answer the question that he finally gave that information on the stand during the course of his trial.
At the trial counsel moved for the suppression of the identification of Anderson on the grounds that he was not represented by counsel at the time the lineup was held and that in court identification of Anderson by those persons who had viewed him in the lineup was improper. Neither the customer who had seen Anderson deliver the check to the store manager nor the one who testified that she had seen Anderson in the store, but did not testify as to the delivery of the check, participated in the lineup identification at the police station. The court overruled the defendant's motion to suppress the testimony of the persons who participated in the lineup as to the identification of Anderson and permitted incourt identification over objection of Anderson by those persons who had seen him at the lineup.
On appeal Anderson assigns four errors. The third and fourth of which are that the court erred in refusing defendant's requested instruction No. 1 and defendant's requested instruction No. 2. We deal with these two assignments now because the other aspects of the case present more serious questions. Instruction No. 1 undertakes to give a definition in the abstract of reasonable doubt. It was properly refused by the court. In Isaacks v. State, 337 So.2d 928 (Miss. 1976), it was stated that the Court properly refused to give an instruction on reasonable doubt since the term defines itself. The Court noted:
The court has spoken a number of times on the giving or failure to give jurors a definition of `reasonable doubt.' Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932). In Boutwell, we held that the court correctly refused to give such an instruction because `reasonable doubt' defines itself and needs no definition by the court.
In Simmons v. State, 206 Miss. 535, 40 So.2d 289 (1949), the appellant argued that the trial judge erred in telling prospective jurors on voir dire examination that `reasonable doubt must be of the type that you can give a reason for when you get back in the jury room and discuss the matter... .' There the court cited Boutwell and pointed out that courts should not attempt to define `reasonable doubt.' We said in Boutwell that the definition given (similar to the definition now before us) was erroneous and, even if the definition were correct, jurors need no definition of `reasonable doubt.' The instruction as given in effect tells jurors that they should be able to state a reason why they have a doubt. Such an instruction is erroneous because, in our jurisprudence, jurors are never required to articulate *728 any explanation of their decision although they are to consult with each other. Cannon v. State, 190 So.2d 848 (Miss. 1966). Such a rule is not peculiar to this state  in most jurisdictions the rule seems to be that instructions which attempt to define `reasonable doubt' are erroneous. 23A C.J.S. Criminal Law § 1280 (1961). That part of the instruction in controversy which defined `reasonable doubt' as based upon reason and common sense may convey abstract logic, but the language `for which a reason (or reasons) can be given' cannot be upheld. Burt v. State, 72 Miss. 408, 16 So. 342 (1894). [337 So.2d at 930]. (Emphasis added).
The Court had given adequate instructions otherwise in regard to the necessity of proof beyond a reasonable doubt of all the elements in the crime involved in the utterance of the forgery.
The second instruction refused by the court was a very detailed one which undertook to outline the several elements of the crime of uttering a forgery in this case. Among other elements that the instruction would have required the jury to find was that defendant intended to cheat and defraud Marguerite Gullick. The indictment charged that the forgery was feloniously, willfully, and unlawfully and presently uttered to injure and defraud Marguerite Gullick and divers other persons. The proof indicated that the money received as a result of the utterance of the forged endorsement had belonged to Toney's Shopping Center, the grocery store. Mrs. Gullick was the manager of Toney's Shopping Center and no objection was made on the occasion of the introduction of the testimony in reference to a discrepancy between the person alleged to have been harmed by the forgery in the indictment and the proof in the case, nor was there any proof in regard to whether or not Mrs. Gullick would have been required to have reimbursed Toney's Shopping Center in regard to the loss. Further, no objection was interposed to an instruction of the state in which there was a requirement that defendant had intended to defraud Toney's Shopping Center. Since the defendant did not object to the variance between indictment and proof at the trial, if any there was, it would appear that the variance between the indictment and the proof was harmless error. See Upshaw v. State, 350 So.2d 1358 (Miss. 1977); Stone v. State, 242 So.2d 127 (Miss. 1970). The requirement in the requested instruction that the proof show intent to defraud Marguerite Gullick was improper. The court held that he had already covered all of the elements of the crime in the other requested instructions and therefore refused to grant this one. The trial court is not required to grant several instructions on the same question in different verbiage as we held in Ragan v. State, 318 So.2d 879 (Miss. 1975).
Moving now to the first assignment of error, the appellant complains that the lower court erred in overruling the defendant's motion to suppress the testimony as to a post-arrest, post-charge lineup identification. In support of this position the appellant cites Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). Moore was one of the cases that has developed as a result of the so-called Wade Trilogy, that is to say the cases: United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). These cases involved a question of deprivation of the rights granted by the Sixth Amendment to the United States Constitution having to do with the right of counsel, and those cases and the ones that followed them held, in effect, that the testimony in regard to a lineup or pretrial identification, after the institution of a "prosecutorial stage" in the proceedings against the defendant were inadmissible in the absence of counsel at the identification proceeding.
The hearing held before the court out of the presence of the jury in regard to the motion to suppress any evidence of identification that came about as a result of the lineup did not completely develop the facts of the matter, and it was only during the *729 trial itself that the testimony in regard to the Miranda warnings, the response of the defendant to those warnings, and the other factors involved in the setting up and procedures that were followed in connection with the lineup came out. The defendant requested and was granted a continuing objection to the whole line of testimony in regard to identification that involved the matter of the lineup, and the testimony of the store manager and her son who had viewed the defendant in the lineup.
The police officer, Mitchell, who conducted the investigation, the arrest and who arranged for the lineup, testified on the trial that he had given the defendant his Miranda rights both at the time of the arrest and again at the police station and that "on January 1, right after he was arrested the suspect, John Henry Anderson insisted on a lineup being held and it was held at the county jail that same day." Again, Mr. Mitchell testified in response to questions as follows:
Q. When you talked with him about his rights, did he not tell you that he wanted an attorney?
A. Yes, sir.
Q. Did you furnish him an attorney at that time?
A. That is normally done as a matter of course by the Sheriff and through the circuit clerk or somebody.
Q. But, even though he said he wanted an attorney, you still went on and conducted a line-up with him, didn't you?
A. It was at his insistence, Mr. Pearson.
Q. But, he was insisting he wanted an attorney there also, did he not?
A. He only stated that he wanted  He wanted to talk to you [defense attorney]. He told his mother he wanted to talk to you at some time, but he was insisting on a line-up at that time.
In Wade the United States Supreme Court said:
Thus both Wade and his counsel should have been notified of the impending line-up, and counsel's presence should have been a requisite to conduct of the lineup, absent an `intelligent waiver.' [388 U.S. at 237, 87 S.Ct. at 1937, 18 L.Ed.2d at 1163].
The defendant, Anderson, took the stand in his own defense, and he never denied the testimony of Police Officer Mitchell that he had demanded the lineup immediately after being taken to the police station. In consequence, we find there was an intelligent waiver of his right to counsel at the time of the lineup which he himself was requesting and insisting upon. This conclusion obviates the necessity for us to make a determination in this case whether or not there had been a formal onset of prosecutorial proceedings at the time of the lineup, and we do not determine that question at this time.
Defendant's second assignment of error is that the lower court erred in permitting incourt identification without establishing independent grounds therefor other than the illegal lineup identification. This objection to the action of the trial court, then, looks toward a failure to afford the defendant the due process rights contained in the Fourteenth Amendment as distinguished from the Sixth Amendment rights which the first suggestion of error maintains was violated by the failure to suppress the testimony in regard to the lineup identification. Here there is no per se rule of exclusion which does obtain in consideration of an objection on the basis of the Sixth Amendment violations where counsel has not been present during a lineup at a time after the prosecution had begun.
In the case of a Fourteenth Amendment objection it becomes incumbent on defendant to show that there was a failure of due process in permitting incourt identification following an alleged illegal lineup. In Stovall v. Denno, supra, the United States Supreme Court said in respect to a pretrial confrontation that whether or not an accused has been afforded due process of law, "depends on the totality of the circumstances surrounding it... ."
Here there was a complete absence of any showing of a failure to afford Anderson due process. Not only had the store manager identified the defendant tentatively *730 from the mug shots but had described him as wearing a hat, which the defendant himself admits he was wearing at the time he was in the store and had given an accurate general description of him to the officer. The testimony of the customer who saw the defendant in the store and saw him hand the check to the store manager could not have been tainted by any illegality of the lineup because she did not view the defendant at the lineup. Similarly, his cousin who saw him in the store but left before the check was presented to the store manager did not view him at the lineup. And finally, he very frankly admits that he was in the store but testifies that it was another person who uttered the forgery. This testimony on his part came after the state had rested and without any motion on the part of defendant for a directed verdict.
It follows that the identity of the defendant as a person who was in the store is admitted by him and he was properly identified as being there, the only question being the factual matter, left for the determination of the jury, as to whether he or the three state witnesses were correct in the statement that he and not someone else was the one who uttered the check with the forged endorsement.
We find that the instructions of the court fairly and adequately informed the jury of the law in this case; that there was a conflict of the evidence and that the jury was justified in finding beyond a reasonable doubt and under proper instructions as to the law that the defendant was guilty as charged in the indictment. We, therefore, affirm the case.
AFFIRMED.
All Justices concur.