902 So.2d 630 (2005)
Edwin Darrell LETT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01967-COA.
Court of Appeals of Mississippi.
March 1, 2005.
Rehearing Denied May 24, 2005.
*632 George S. Shaddock, Pascagoula, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Edwin Darrell Lett was convicted by a jury for murder, and the Jackson County Circuit Court sentenced Lett to serve a life sentence. Lett appeals, raising the following issues:
I. WHETHER THE JURY VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION S-2, SUCH AN INSTRUCTION BEING A "CHECK-OFF" LIST BOLSTERING THE TESTIMONY OF THE SUSPECT WITNESSES
III. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION S-4
IV. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION OF MANSLAUGHTER
V. WHETHER THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S JURY INSTRUCTION DEFINING REASONABLE DOUBT
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On December 2, 2001, in a hotel room in Moss Point, Mississippi, there was a drinking and drug-dealing party. The testimony at trial showed that there was a fight between Timothy Dickerson and Edwin Darrell Lett. Shots were fired, and these shots ultimately killed Dickerson. After the shooting, Lett left the hotel *633 room. At approximately 5:17 a.m., the Moss Point Police received a call reporting the shooting. Several eyewitnesses were present at the time of the shooting, and they all accused Lett of shooting Dickerson.
¶ 4. After investigating the incident and interviewing various witnesses, the Moss Point authorities determined Lett to be a prime suspect in the crime. While Lett was in the Moss Point Municipal Building paying traffic fines, he was arrested and charged with the murder of Dickerson. After a trial and an eight and one-half hour deliberation by the jury, Lett was convicted of murder and sentenced to life imprisonment. Miss.Code Ann. § 97-3-19(1) (Rev.2000). He now prosecutes this appeal, arguing that the conviction was against the overwhelming weight of the evidence and arguing that the trial court abused its discretion in granting certain jury instructions while denying other jury instructions.

ANALYSIS

I. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 5. On appeal, courts will not reverse and grant a new trial unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable justice. Kingston v. State, 846 So.2d 1023, 1026(¶ 9) (Miss.2003) (citing Pruitt v. State, 807 So.2d 1236, 1243(¶ 22) (Miss.2002); Dudley v. State, 719 So.2d 180, 182(¶ 7) (Miss.1998)). Lett argues that the lack of credible evidence from the prosecution warrants a reversal. He argues that each of the State's eyewitnesses had reasons to fabricate their testimony and accuse Lett of murder, and that the jury should have rejected their respective testimonies.
¶ 6. We find that the State put on credible evidence that Lett shot and killed the victim. This evidence was established by testimony of five eyewitnesses, including Shianne Hartley, Pam Strandberg, Michael Bennett, James Bridges, and Michael Johnson.
¶ 7. Shianne Hartley testified that she was at the hotel for the purpose of buying drugs. She saw a confrontation between two men who argued. Hartley recalled hearing three shots. She testified that Lett was the only person in the room who owned a gun, and that Lett was within about three feet from Dickerson immediately before the shooting. Hartley could hear Dickerson and Lett argue about who had rented the hotel room. When the gun was fired, everyone in the room screamed and dove to the floor. When Hartley got to her feet and closed the door, she noticed that Lett's car was gone. Hartley picked Lett from a photo lineup as the person who shot Dickerson. Hartley testified that she was not high at the time, although she admitted that she had smoked and snorted cocaine approximately three hours before the shooting.
¶ 8. Pam Strandberg, who was in the hotel room when the shooting occurred, testified that she saw Dickerson and Lett approach each other. Out of the corner of her eye, Strandberg saw Dickerson push Lett on the shoulder, which appeared to be a small push. Then, a gun went off, but she was not sure how many shots were fired. Strandberg saw Lett with the gun in his hand. Although Strandberg had seen Dickerson with a shotgun earlier that day, he laid that gun on the counter. Dickerson's gun remained on the counter when Lett entered the room and when the shot was fired. Strandberg did not tell the police what had happened when they arrived *634 because she was scared. Strandberg admitted to having snorted cocaine only a few minutes before the shooting took place.
¶ 9. Michael Bennett was at the hotel at the time of the shooting and came to the hotel room with another eyewitness, Michael Johnson. He corroborated the testimonies of Hartley and Strandberg. Only twenty seconds after Dickerson and a girl entered the room, another male entered and began arguing with Dickerson over who rented the room. They were rubbing against each others' chests as they argued. He testified that Johnson unsuccessfully tried to calm the men down. The second man pulled a gun on Dickerson, and Dickerson began backing away. The man fired one shot and went towards the door, then held the gun sideways and fired another shot. Bennett left the scene after the shooting. Bennett was unable to recognize the person doing the shooting, because his eyes stayed focused on the pistol.
¶ 10. James Bridges was at the parking lot of the hotel when he heard the gunshots. After he heard the shots, he saw a man come out of the room. Although Bridges could not recall what the man was wearing or how tall he was, he did know the man's name to be "Rail."[1] Bridges left the parking lot after seeing Lett leave the room. The police interviewed Bridges two days after the shooting. Bridges identified Lett as the person that he saw leaving the room in the morning. Bridges also identified Lett in the courtroom.
¶ 11. Michael Johnson was at the hotel at the time of the shooting. It had been approximately two hours since Johnson had his last alcoholic drink. Johnson recalled Strandberg approaching his truck in the parking lot and asking him and Bennett to come in the room. Johnson was in the room approximately two minutes when Dickerson came in the hotel room with a girl. Johnson noticed that Dickerson was carrying a gun in a trench coat. Dickerson walked into the bathroom, and when he came out of the bathroom, he was wearing a t-shirt and did not have a gun. Approximately two minutes later another man knocked on the door and came in the room. Dickerson told the man to leave, and the two men engaged in a fight. Johnson stood up and tried to calm the men down, but to no avail. At that time, a shot was fired, but not by Dickerson. After the first shot was fired, the man turned the pistol upside down and fired another shot. Johnson saw the man who fired the shots drive away. According to Johnson, there were seven people in the room at the time of the shooting. In the courtroom, Johnson identified Lett as the man who did the shooting.
¶ 12. Lett has strenuously asserted that the evidence produced by the State was not sufficiently credible. The circuit judge denied Lett's motions for a new trial and for a judgment notwithstanding the verdict because it found the State's evidence to be credible. In determining whether a jury verdict was against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997). We find no abuse of discretion. The State wanted to prove that Lett engaged in a fight with Dickerson, shot Dickerson when he was unarmed, and immediately drove off after the shooting. The witness testimony substantiated these facts.

*635 II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION S-2
¶ 13. A trial judge shall not grant jury instructions that give undue prominence to particular portions of evidence. Jury instructions that emphasize any particular part of the testimony in such a matter as to comment upon the weight of the evidence are improper. Sanders v. State, 586 So.2d 792, 796 (Miss.1992); Duckworth v. State, 477 So.2d 935, 938 (Miss.1985).
¶ 14. The State's jury instruction S-2 pertained to identification testimony of the witnesses and instructed the jury to consider whether the eyewitnesses properly identified Lett as the perpetrator of the crime. It reads:
The Court instructs the jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and circumstances surrounding the crime. As with each element of the crime charged, the State has the burden of proving identity beyond reasonable doubt, and before you may convict Edwin Darrell Lett you must be satisfied beyond a reasonable doubt of the accuracy of the identification of Edwin Darrell Lett. If, after considering all of the evidence concerning the crime and the witness' identification of Edwin Darrell Lett as the person who committed the crime, you are not convinced beyond a reasonable doubt that he is the person who committed the crime, then you must find him not guilty. Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the identification testimony of the witness, you should consider the following:
1. Did the witness have an adequate opportunity to observe the offender?
2. Did the witness observe the offender with an adequate degree of attention?
3. Did the witness provide an accurate description of the offender after the crime?
4. How certain is the witness of the identification?
5. How much time passed between the crime and identification?
If after examining all of the testimony and the evidence, you have a reasonable doubt that Edwin Darrell Lett was the person who committed the crime, then you must find Edwin Darrell Lett not guilty.
¶ 15. Lett submits that this jury instruction amounts to a check-off to a jury in correcting and bolstering the testimony he claims to be suspect. In claiming error in the trial court's grant of this jury instruction, he claims that this instruction enabled the jury to give undue weight to evidence that was not credible.
¶ 16. In challenging the credibility of the evidence, Lett points to evidence that makes him believe that the jury wrongfully relied on the State's witnesses. Four of the five eyewitnesses had been partying the afternoon and evening of December 1, 2002.[2]
¶ 17. Lett recites parts of the testimony from the eyewitnesses to demonstrate that the State called a "pathetic parade of witnesses" whose testimony should have been rejected by the jury. Hartley testified *636 that she was in Moss Point because she was on a drug binge. She was searching for drugs at the hotel and came to the hotel room only because the door was open. Strandberg, after hearing the gunshots, returned to the hotel room, took the drugs from Dickerson's body, and waited for the police. Lett also alleges that Strandberg gave various stories to the police over the course of the investigation. Hartley and Strandberg had been convicted of felonies, and Lett believes that the jury should not have believed such immoral witnesses. Bennett had been drinking in Alabama and had returned to Moss Point for some sex. One person, Cherri Thompson, had been in the hotel room longer than anyone other than Strandberg. She was unable to identify Lett. When the State sought her as a witness, Thompson apparently disappeared. Lett argues that jury instruction S-2 was an attempt by the State to rehabilitate what he considers to be a weak showing of evidence.
¶ 18. We are unable to find that the language in jury instruction S-2 rehabilitates the eyewitnesses, directs the jury to weigh the eyewitness testimony more favorably than that of other witnesses, or attempts to manipulate the jury verdict. Lett essentially argues that instruction S-2 was in error because no reasonable juror could have believed the testimony of the State's eyewitnesses. The question of credibility was one for the jury, not this Court, to evaluate. "The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity." Noe v. State, 616 So.2d 298, 303 (Miss.1993).

III. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION S-4
¶ 19. The State's instruction S-4 was a jury instruction defining the elements of murder. It instructed the jury that "murder is the killing of a human being, not in necessary self-defense, and without the authority of law, by any means or by any manner, when done with the deliberate design to effect the death of the person killed; or, when done in commission of an act eminently [sic] dangerous to others and evincing a depraved heart." This instruction allowed the jury to convict Lett of murder if the killing was of deliberate design, Miss.Code Ann. § 97-3-19(1)(a) (Rev.2000), or if the killing evinced a depraved heart. Miss.Code Ann. § 97-3-19(1)(b) (Rev.2000). The Mississippi Supreme Court allows the State to submit jury instructions that enable the jury to convict either for deliberate design murder or for depraved heart murder. "[E]very murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life." Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992).
¶ 20. A trial court may refuse a proffered jury instruction when there is no foundation in the evidence. Coleman v. State, 804 So.2d 1032, 1037(¶ 24) (Miss.2002) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Lett argues that there is no evidence to submit a jury instruction for murder. He claims the testimony shows only that Lett was in the hotel room during the morning of the crime; that Lett had a pistol and that shots were fired; and that Dickerson ultimately died from a gunshot wound.
¶ 21. We are unable to accept Lett's argument that the State failed to produce evidence showing that Lett is guilty of murder. The State produced evidence showing Lett as the person who shot *637 and killed Lett. The eyewitnesses saw or heard shots being fired, and they identified Lett in court and in a police lineup as the person who fired the gun. The State produced evidence showing depraved heart murder by establishing that Lett was engaged in a fight with an unarmed man before Lett fired the shots, in a hotel room with several people present. "The classic example of depraved heart murder, as taught in law school, is the example of one shooting into a crowd." Dowda v. State, 776 So.2d 714, 717(¶ 18) (Miss.Ct.App.2000) (Irving, J. dissenting). It was not necessary for the eyewitnesses to have actually seen Lett do the shooting. It is within the province of the jury to draw reasonable inferences from the evidence based on their experience and common sense. Lewis v. State, 573 So.2d 719, 723 (Miss.1990). Lett's argument is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION OF MANSLAUGHTER
¶ 22. The State's jury instruction S-6 was an instruction for the jury to convict Lett of manslaughter if it were unable to convict Lett of murder. The manslaughter instruction was designed as a lesser-included offense instruction. Lett objected to this instruction because he argued that the instructions were confusing and were given to insure that the jury would render a guilty verdict. Lett did not want the option of a manslaughter conviction and expressed this desire to the trial court.
¶ 23. In State v. Shaw, 880 So.2d 296, 298(¶ 2) (Miss.2004), the circuit court granted a directed verdict for the defendant on the indicted charge of murder and would not allow the jury to consider whether Shaw was guilty of manslaughter. The State argued that even if the State failed to make out a prima facie case on the charge of murder, the trial judge should have the discretion to submit the case to the jury on the unindicted offense of manslaughter. The supreme court agreed and held that the State should have been allowed to submit jury instructions for manslaughter. "Along with our case law, our statutory law clearly allows the jury to find a defendant guilty for an `inferior offense' of the offense charged in the indictment." Id. at 304(¶ 29) (quoting Miss.Code Ann. § 99-19-5 (Rev.2000)). There is no merit in Lett's argument that the jury instructions should have been refused because he did not desire to be convicted of manslaughter or because the jury instructions were designed to guarantee a guilty verdict.
¶ 24. Lett argues that the manslaughter jury instruction should not have been given because there was no evidentiary basis for convicting Lett of manslaughter. This assertion is simply incorrect. "[M]anslaughter has been consistently held by this Court to be a lesser included offense of murder." Shaw, 880 So.2d at 303(¶ 25). Because manslaughter is a lesser-included offense of murder, and because we have held that the State had an evidentiary basis for submitting a jury instruction on murder, the State had an evidentiary basis for requesting jury instructions for manslaughter. "An accused could not be guilty of the offense for which he is indicted without at the same time being guilty of the lesser include offense. The lesser included crime is encompassed within the crime for which the accused is indicted." Murrell v. State, 655 So.2d 881, 891 (Miss.1995).
¶ 25. Finally, we reject Lett's argument that an instruction for manslaughter as a lesser-included offense of murder should have been rejected because it was confusing to the jury. It is routine in our *638 courts for the State to submit jury instructions for murder and to submit a jury instruction for manslaughter as a lesser-included offense. There is nothing inherently confusing about submitting lesser-included jury instructions for manslaughter. "When there is an issue for the jury on the question of murder, the defendant cannot complain of the granting by the court of an instruction on manslaughter." Crawford v. State, 515 So.2d 936, 938 (Miss.1987) (citing Cook v. State, 467 So.2d 203, 209 (Miss.1985); Hubbard v. State, 437 So.2d 430, 438-39 (Miss.1983)). This argument is without merit.

V. WHETHER THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S JURY INSTRUCTION DEFINING REASONABLE DOUBT
¶ 26. Lett's attorney proposed instruction D-5, which was a definition of reasonable doubt. The trial judge refused to give this instruction to the jury, because Mississippi state courts do not allow judges to give jury instructions on reasonable doubt. Lett argues that the trial judge erred in refusing to give the jury an instruction on reasonable doubt because all federal courts and most state courts do allow a defendant to give the jury an instruction on reasonable doubt. Lett believes that the time has come for the Mississippi state courts to allow a jury instruction on reasonable doubt.
¶ 27. The Mississippi Supreme Court has repeatedly and consistently asserted that "[r]easonable doubt defines itself." Martin v. State, 854 So.2d 1004, 1009(¶ 12) (Miss.2003); Chase v. State, 645 So.2d 829, 851 (Miss.1994); Williams v. State, 589 So.2d 1278, 1280 (Miss.1991); Allman v. State, 571 So.2d 244, 252 (Miss.1990); Barnes v. State, 532 So.2d 1231, 1235 (Miss.1988); Anderson v. State, 413 So.2d 725, 728 (Miss.1982); Smith v. State, 394 So.2d 882, 884-85 (Miss.1981); Isaacks v. State, 337 So.2d 928, 930 (Miss.1976); Simmons v. State, 206 Miss. 535, 538, 40 So.2d 289, 290-91, (1949); Boutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932).
¶ 28. Lett argues that the line of cases refusing to define reasonable doubt should be overruled, arguing that reasonable doubt is not self-defining. Periodically, our courts have explained why jury instructions defining reasonable doubt should be refused. "The instruction as given in effect tells jurors that they should be able to state a reason why they have a doubt. Such an instruction is erroneous because, in our jurisprudence, jurors are never required to articulate any explanation of their decision." Isaacks, 337 So.2d at 930 (citing Cannon v. State, 190 So.2d 848, 851 (Miss.1966)). In Berry v. State, 859 So.2d 399, 404(¶ 17) (Miss.Ct.App.2003), this Court stated that it was proper to refuse the jury instruction defining reasonable doubt because the instruction was superfluous. "The jury received a plethora of instructions concerning reasonable doubt. The jury had been fully informed that before it could return a verdict of guilty it had to believe beyond a reasonable doubt that [the defendant] was guilty." Similarly, in this case all of the State's jury instructions instructed the jury to find Lett guilty only if the State established guilt beyond a reasonable doubt. We decline to alter this longstanding and legally sound precedent.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*639 KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS AND BARNES, JJ., CONCUR. ISHEE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J. AND IRVING, J. IRVING CONCURS IN RESULT ONLY.
ISHEE, J., Specially Concurring.
¶ 30. While I agree with the majority in this case and vote to affirm Lett's conviction, there is one issue that I believe needs to be addressed in this separate opinion. The trial court in this case refused to give proposed jury instruction D-5, which defined reasonable doubt, because under the current state of Mississippi law, a trial judge is not allowed to give a jury instruction defining this legal term. Lett, however, argues that the time has come for the Mississippi state courts to allow a jury instruction which defines reasonable doubt; I agree.
¶ 31. Mississippi is one of only eleven states currently refusing to allow a definition of reasonable doubt to go to the jury. Lett argues that the term reasonable doubt does not define itself. This contention is backed up, not only by thirty-nine other states, but by the federal judiciary. In fact the jury instruction offered by Lett has been recognized and used by the Fifth Circuit Court of Appeals for a number of years. See U.S. v. Stewart, 879 F.2d 1268 (5th Cir.1989).
¶ 32. Mississippi is a state of many diverse individuals. I have personally seen criminal juries where high school drop-outs sat next to Ph.Ds. While both of these types of individuals are undoubtedly conscientious and competent jurors, it does not take a stretch of the imagination to assume that these two types of individuals would have different ideas in defining reasonable doubt without guidance from the trial court.
¶ 33. The United States Supreme Court has spoken on the requirements of a reasonable doubt instruction:
The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course; so long as the trial court instructs the jury on the necessity that defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.
Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (citations omitted).
¶ 34. Although there is no constitutional requirement for the specific wording of a reasonable doubt instruction, the United States Supreme Court has further held that the reasonable doubt standard has "constitutional stature" and that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Victor Court clearly left defining reasonable doubt to the discretion of the states. The federal judiciary and thirty-nine other states recognize this compelling constitutional mandate and define reasonable doubt for their jurors.
¶ 35. As Lett points out, the In re Winship court firmly and fully established the constitutional requirements for strict employment of the reasonable doubt standard in all criminal prosecutions. I agree that to demand this strict standard and then fail to define it treads on dangerous ground.
*640 ¶ 36. The trial judge in this case was correct in refusing to grant jury instruction D-5 given the current state of Mississippi law. However, the federal courts and the majority of our sister states recognize the constitutional stature of this due process requirement, and provide an instruction explaining the reasonable doubt standard to their jurors. It is time for our state to come in line with the majority view, and to define reasonable doubt for our jurors.
LEE, P.J. AND IRVING, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] "Rail" is Lett's nickname.
[2] Bridges was the only eyewitness who was not partying that evening. Two other witnesses, Bennett and Johnson, had been partying that evening and came to Moss Point for sex, but they were not under the influence of drugs or alcohol at the time of the shooting.