# IN THE SUPREME COURT OF MISSISSIPPI1

## NO. 97-KA-00238-SCT

*JOHN PRUITT a/k/a JOHN RICHARD PRUITT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/26/1990 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LISA D. COLLUMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-02/21/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/14/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On October 10, 1989, John Richard Pruitt was indicted in the Harrison County Circuit Court for the murder of Joan Easterling. At the conclusion of trial, a jury convicted Pruitt, and he was sentenced to life imprisonment without possibility of parole. Following sentencing, Pruitt's attorneys filed both a motion for a new trial and a motion to withdraw, citing Pruitt's intention to appeal based on ineffective assistance of counsel. The trial court eventually appointed new counsel for Pruitt. Pruitt's new attorney then filed an amended motion for a new trial or in the alternative a JNOV which was overruled by the trial court.[(1)] Aggrieved, Pruitt appeals, raising the following issues, which have been edited for clarity:

**I. WHETHER PRUITT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

**II. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF OTHER BAD ACTS IN VIOLATION OF M.R.E. 404(b).**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING PRUITT'S MOTION TO SUPPRESS HIS CONFESSIONS.**

**IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIM INTO EVIDENCE.**

**V. WHETHER SUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE JURORS COULD HAVE FOUND PRUITT GUILTY OF MURDER.**

## VI. WHETHER THE TRIAL COURT ERRED IN DENYING PRUITT'S MOTION FOR JNOV OR ALTERNATIVELY A NEW TRIAL.

¶2. Finding these issues to be without merit, we affirm.

## FACTS

¶3. On November 6, 1988, John Pruitt confessed to the murder of Joan Easterling, a Pass Christian resident. Pruitt first confessed his involvement during a conversation (initiated by Pruitt) with Kenneth Bangs, a jailer with the Harrison County Sheriff's Department. According to Bangs, Pruitt then asked to speak with Detective Thomas Ruspoli of the Pass Christian Police Department. Bangs wrote a narrative detailing his conversation with Pruitt which reads as follows:

> On date listed above at approximately 17:45, I, Deputy Bangs, was making my usual cell check when above subject stopped me, John Pruitt, and stated he had something to get off his chest. I asked what, and above subject stated he killed a lady by hitting her in the head with a hammer. I asked her name. Above subject stated her name was Joan, but was not sure of her last name. Then I asked above subject, where did he kill her. Above subject then stated, in her house in Pass Christian. Above subject then stated he broke into a house and stole a gun that he was going to use to kill his ex-wife.

¶4. Later, Pruitt was interviewed by Detective Ruspoli and after receiving *Miranda* warnings, Pruitt again confessed to the killing. According to this statement, an intoxicated Pruitt persuaded Easterling to let him into the house by claiming that Nell Deronja (Pruitt's aunt and the owner of the home Easterling was renting) sent him to fix a leaking water pipe. Once inside, Pruitt first pulled a knife on Easterling. She then began screaming, and Pruitt panicked and began beating her with a ballpeen hammer he found lying on a cabinet. After killing Easterling, Pruitt tried to arrange her clothes so that it would appear to have been a rape. Pruitt admitted that his true purpose in entering the home was to rob Easterling because he "needed some money." He then left the home and threw his bloody clothes into a canal. At the time of Pruitt's statement to Detective Ruspoli, Pruitt said that he felt slightly intoxicated, but clearly admitted to his involvement in the crime. Pruitt's clothes were later recovered from the area where he claimed to have disposed of them.

¶5. Pruitt had been arrested earlier on the afternoon of his confession on charges of possession of a firearm by a convicted felon, and at the time of his arrest, he was in a Gulfport bar where he had drunk several beers. At trial, Pruitt moved to suppress his confession on the grounds that it was involuntary due to intoxication. However, several witnesses testified that he did not appear to be intoxicated at the time of his confession. Ultimately, the trial court concluded that the level of detail in Pruitt's responses combined with the number of witnesses who said he did not appear to be intoxicated at the time of his confession indicated that, assuming Pruitt was intoxicated at all, he was not so intoxicated as to render his confession involuntary. Consequently, the statement was ruled admissible, although it was edited in some places so as to eliminate any reference to past crimes, bad acts, or irrelevant information.

¶6. Pruitt himself was the only defense witness called, and he denied killing Easterling, claiming that his confession was a result of his intoxication and intimidation by police officers who threatened him with the death penalty. In rebuttal, Detective Ruspoli denied threatening Pruitt with the death penalty and denied telling him what to say. The State also pointed out in its cross-examination of Pruitt that his eleven-page confession was very detailed and that he would have had less than 20 minutes to memorize the information contained within it, if he had been coached by police at a time when he claimed to have been too

intoxicated to know what he was doing.

<u>ANALYSIS</u>

**I. WHETHER PRUITT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

¶7. Pruitt first argues that he received ineffective assistance of counsel, although he limits this claim to two points. First, Pruitt notes that this attorney at trial told the jury in closing arguments that either Pruitt or Michael Deas (a handyman who worked for Nell Deronja and had an opportunity to commit the crime) killed Easterling, thereby eliminating the possibility that a third person killed Easterling. Second, Pruitt complains that his trial attorney failed to object to the admission of a transcript of his statement to Detective Ruspoli confessing to the crime and furthermore failed to object to the trial court's failure to give a cautionary instruction regarding the statement.

¶8. The standard of review for a claim of ineffective assistance of counsel is the familiar two-part test articulated by ***[Strickland v. Washington](#)***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): the defendant must prove, under the totality of the circumstances, that (1) his attorney's performance was defective and (2) the deficiency deprived the defendant of a fair trial. This review is highly deferential to the attorney, and there is a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. ***Hiter v. State***, 660 So.2d 961, 965 (Miss.1995). With respect to the overall performance of the attorney, "counsel's failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and do not give rise to an ineffective assistance of counsel claim. ***Cole v. State***, 666 So.2d 767, 777 (Miss.1995).

*A. The statement during closing arguments.*

¶9. Pruitt first argues that his trial counsel was ineffective as a result of the following statement made during closing arguments:

> First of all, there's no question about where everybody lives and where the house is and all that came and stayed with his Aunt Nell the Thursday night before this happened. There's no question at all. There is a question as to when Michael Deas came there and why he came there. And I want to say this for sure: There was a killer - there is a killer in the courtroom either right now or that has been this week. Either John Pruitt killed that lady or Michael Deas killed that lady. It's just that simple; one of the two of them. It had to be one of the two. It had to be. No question about that; and that's why I want to look at both of them rather than just John Pruitt.

Michael Deas was a transient handyman who worked for Nell Deronja in exchange for room and board for himself and his girlfriend. Deas and the girlfriend moved into the backroom of Deronja's home on the day of the murder, and Deas met Pruitt and shared a beer with him that morning. Deas testified that he saw Pruitt again later that afternoon but that Pruitt did not acknowledge his call. Deas spent the rest of that afternoon working by himself on a shed on Deronja's property which was near Easterling's house. Deas continued to work for Deronja for about a month after the murder. At the time of the trial, Deas was in jail in Cobb County, Georgia, on charges of violating his parole.

¶10. The record reflects that Deas was the only witness to physically place Pruitt near the scene of the crime, and Pruitt's attorney at trial went to great lengths to suggest to the jury that Deas himself was the killer and that Pruitt's jailhouse confession was coerced. Pruitt now argues basically that his attorney

overplayed his hand, so to speak, by eliminating the possibility that some unidentified third person was the actual killer. While Pruitt may be correct in his assessment of his counsel's tactics, the argument at issue here still fails because it falls under the ambit of trial strategy. Further, focusing as much attention as possible on Deas, a transient ex-con who had only moved in that very day, would seem more effective than merely speculating about some unknown assailant. Therefore, this issue cannot support an ineffective assistance claim.

### B. The admission of the transcript.

¶11. Pruitt also argues that his trial attorney erred by not objecting when a transcript of his confession was admitted into evidence along with the audio recording of it. In fact, however, the record reflects that Pruitt had lodged a continuing objection to any discussion of his inculpatory statement which was acknowledged by the trial court as the transcripts were being passed out. Thus, there is no reason why a separate objection would be needed to preserve this issue on appeal. In any case, Miss. Code Ann. § 99-17-37 (2000) states that "[a]ll papers read in evidence on the trial of any cause may be carried from the bar by the jury," and we have interpreted this to allow juries to take the transcripts of recordings played during trial. *Walker v. State*, 671 So.2d 581, 604 (Miss. 1995). This assignment of error is also without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF OTHER BAD ACTS IN VIOLATION OF M.R.E. 404(b).

¶12. Pruitt next argues that the trial court erred in admitting into evidence Deputy Bangs's narrative of Pruitt's initial confession. Pruitt argues this admission improperly placed evidence of prior bad acts in the form of his arrest for possession of a firearm before the jury in contravention of Mississippi Rule of Evidence 404(b). In fact, Deputy Bangs's narrative does not refer to his arrest for possession of a firearm at all. Rather, the Rule 404(b) evidence to which Pruitt objected at trial was his alleged statement to Bangs that he "broke into a house and stole a gun that he was going to use to kill his ex-wife."

¶13. Furthermore, the record reflects that the Bangs narrative was actually offered into evidence by Pruitt himself during his cross-examination of Bangs rather than the State. On redirect, the State then had Bangs read the narrative to the jury in its entirety. Upon Pruitt's objection, the State pointed out the fact that Pruitt was the one who offered the narrative into evidence, which Pruitt's attorney denied having done. The trial court overruled Pruitt's objection. While Pruitt's attorney later indicated that he was under the impression the Bangs narrative would have been redacted to eliminate the prior bad acts as Pruitt's other confessions had been, the record reflects only that Pruitt requested a redaction of prior arrests from his interview with Detective Ruspoli**.**

¶14. As the State notes, the general rule is that a defendant cannot complain of evidence he himself brings out, nor can an attorney inviting error later complain of it. *See Singleton v. State*, 518 So.2d 653, 655 (Miss. 1988); *Davis v. State*, 472 So.2d 428, 432 (Miss. 1985); *Jones v. State*, 381 So.2d 983, 991 (Miss. 1980)("We think an appellant cannot assail as prejudicial his own trial tactics, because it would foster a propensity in litigants to create error to enhance the possibility of reversal and repeated trials. This he is not permitted to do."). The record reflects that Pruitt invited any error by offering the Bangs narrative into evidence in order to impeach Deputy Bangs. Pruitt cannot now complain that the trial court erred in letting the State read aloud what he had already published to the jury. This issue is without merit.

## III. WHETHER THE TRIAL COURT ERRED IN DENYING PRUITT'S MOTION TO

**SUPPRESS HIS CONFESSIONS.**

¶15. At trial, Pruitt claimed that he was coerced into confessing by threats that he would receive the death penalty if he did not. He has abandoned this claim on appeal and now alleges only that his confession was involuntary due to his intoxication and that his free will was overcome by the suggestion of Deputy Bangs that it would go better for him if he confessed. Pruitt also cites his eighth-grade education as a factor the trial court should have considered in suppressing his confessions, although he cites no authority for that proposition.

¶16. We have recently held that:

> The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances. Further, where there is conflicting evidence on a confession's admissibility, this Court will not disturb the court's findings "unless it appears clearly contrary to the overwhelming weight of the evidence."

*O'Halloran v. State*, 731 So.2d 565, 570-71 (Miss. 1999)(internal citations omitted). *See also **Johnson v. State***, 511 So.2d 1360, 1365 (Miss. 1987)("Intoxication . . . does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication").

¶17. The record reflects evidence that Pruitt had been drinking on the morning of his arrest, and he claimed to have been drinking heavily the night before. Pruitt said in his confession to Detective Ruspoli that his arrest took place at about 1:00 in the afternoon, but his first confession to Deputy Bangs did not take place until 5:45 that night, and his second confession to Detective Ruspoli did not take place until later at 8:10 that night. Furthermore, Deputy Bangs, Detective Ruspoli, and several other witnesses all testified that Pruitt did not appear to be intoxicated at the time of his confessions. Finally, Deputy Bangs categorically denied making any coercive statements to Pruitt that it would go better for him if he confessed.

¶18. In sum, Pruitt has failed to show that the trial court's findings regarding the voluntariness of his confessions were clearly against the overwhelming weight of the evidence. This issue is without merit.

## IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIM INTO EVIDENCE.

¶19. The admissibility of photographs rests within the sound discretion of the trial judge. *Griffin v. State*, 557 So.2d 542, 549 (Miss.1990). "Photographs have evidentiary value where they: 1) aid in describing the circumstances of the killing and the corpus delicti; 2) where they describe the location of the body and cause of death; and 3) where they supplement or clarify witness testimony." *Westbrook v. State*, 658 So.2d 847, 849 (Miss. 1995)(citing *Ashley v. State*, 423 So.2d 1311 (Miss.1982); *Hughes v. State*, 401 So.2d 1100 (Miss.1981); *Williams v. State*, 354 So.2d 266 (Miss.1978)).

¶20. In addition to any probative value the photographs offered from showing the crime scene and the cause of death, the photographs at issue here were clearly probative because they corroborated Pruitt's confession. In his confession to Detective Ruspoli, Pruitt stated that he arranged Easterling's clothing after killing her in order to suggest rape and thereby throw police off his trail. Since the photographs did have probative value, the trial court did not abuse its discretion in admitting them into evidence.

## V. WHETHER SUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE

**JURORS COULD HAVE FOUND PRUITT GUILTY OF MURDER.**

**VI. WHETHER THE TRIAL COURT ERRED IN DENYING PRUITT'S MOTION FOR JNOV OR ALTERNATIVELY A NEW TRIAL.**

¶21. These two issues can be analyzed in concert, as challenges to the sufficiency of the evidence (implicated in motions for directed verdict and for JNOV) and challenges to the weight of the evidence (which are implicated in motions for a new trial) raise similar issues. With regard to a motion for JNOV in a criminal trial, we have said:

> This Court's standards of review regarding a denial of a judgment notwithstanding the verdict and a peremptory instruction are the same. Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Coleman v. State*, 697 So.2d 777, 787-88 (Miss. 1997).

¶22. In contrast, our standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Dudley v. State*, 719 So.2d 180, 182 (Miss. 1998)(citations omitted).

¶23. The essence of Pruitt's argument is that his detailed jailhouse confessions could not support a guilty verdict in the absence of any physical evidence linking him to the crime scene. However, Pruitt overlooks the fact that his confession was corroborated by details of the crime scene which only police or the murderer could have known (such as the instrument used or how Easterling's clothes were arranged) and by the fact that the clothes he wore when committing the crime were later found where he claimed to have disposed of them. In any case, viewing all the evidence in the light most favorable to the State and accepting as true the evidence supporting the verdict, we must inevitably conclude that there was no abuse of discretion by the trial judge and that Pruitt's multiple confessions provided sufficient evidence to support the guilty verdict. This issue is also without merit.

## CONCLUSION

¶24. Based on the foregoing analysis, we conclude that Pruitt's trial counsel was not ineffective; that his confessions were properly admitted (including the statement which implicated prior bad acts); that the trial court did not err in admitting the crime scene photographs; and that denying Pruitt's motions for directed verdict, for JNOV and for a new trial was proper. Therefore, the judgment of the Harrison County Circuit Court is affirmed.

¶25. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PROBATION OR PAROLE, AFFIRMED.**

   **PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**

1. The original motion for a new trial was filed on January 26, 1990, by Pruitt's trial counsel. The amended motion was filed on February 20, 1992, by Pruitt's second attorney. This motion was overruled on January 6, 1997. Pruitt's notice of appeal was filed by a third set of attorneys on February 4, 1997. The record does not explain the unusual delay in this case's direct appeal, particularly in the five-year delay between filing of the amended motion for a new trial and the order overruling it.