# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00749-SCT

*PATRICIA ANN KINGSTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/17/2000 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRIAN BIENVENU ALEXANDER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-05/22/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a jury verdict in the Circuit Court of Hancock County.  The jury convicted Patricia Ann Kingston of the murder of her husband, Herman Cowan.  She was ultimately sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC).  Aggrieved by the conviction, Kingston submits two issues on appeal: (1) whether the trial court erred in its failure to grant her  motion for JNOV or in the alternative a new trial, and (2) whether the court erred in denying jury instructions D-5 and D-6.

**FACTS**

¶2. On August 20, 1998, Kingston and Cowan spent the evening at the Casino Magic. After August 20, 1998, Cowan was missing until his body was found by a fisherman. It was floating in a trunk in the Bayou LaCroix in Hancock County on February 28, 1999. At the time of his death, Cowan was living in Bay St. Louis, Mississippi, in a duplex owned by Kingston, Cowan and his stepdaughter, Tiffany, who shared the duplex with him. Kingston resided in Bay St. Louis in her antique store, *Pattiff,* where she had moved before Cowan was reported missing.

¶3. Cowan's employer, Kelvin Schulz, concerned about Cowan's failing health and the fact that Cowan did not call in, first contacted the authorities when Cowan did not show up for his part-time job on August 21, 1998. On August 23, 1998, Al Kingston, Sr., Kingston's father, filed a missing person's report. An autopsy report revealed that Cowan died of a gunshot wound to the back of the head. The body was placed in a cedar trunk and was disposed of in the Bayou LaCroix.

¶4. An interview, by the police, of a witness regarding the murder of a Mr. Sanders in the Ansley community led to information about Cowan's murder. The witness stated that Robert Gray Gainey, son-in-law to Kingston, told the witness that Gainey helped Kingston dispose of the body by placing it in a trunk and throwing it in the marsh.

¶5. Gainey is married to Kingston's daughter and lived in one side of the duplex with her while Cowan resided on the other side. Gainey also worked in the antique shop for Kingston. Gainey testified that on August 21, 1998, Kingston came to the duplex and woke him up to help her with a problem at the antique store. He stated that when they arrived she told him to go into the warehouse where he found Cowan's dead body lying on the floor. After discovering the body, Gainey stated that Kingston asked him to help clean up the mess and that he noticed that she had a revolver. However, Gainey stated that when he said

that he did not want to have any part in it, Kingston said, "we had to clean this mess up or there'd be more than one body laying here." Gainey admitted that since he had already become an accessory by cleaning up the mess, he helped her dispose of the body. Gainey further stated that Kingston admitted to him, months later, that she killed Cowan.

¶6. Gainey was arrested in March of 1999 in connection with the death of Sanders. After his arrest, he was questioned about the Cowan murder. Gainey later gave a statement to the police implicating Kingston. He also took the police to the antique shop and to the bayou and assisted them as they videotaped the crime scenes. He also stated that Kingston owned a .38 revolver which he had hidden in the shop for her after the incident. Cowan was shot with a .38 caliber gun. However, the police never recovered the weapon.

¶7. Gainey entered a plea agreement with the State offering to testify against Kingston and in exchange, he would plead to accessory after the fact in the Cowan murder as well as the Sanders murder and receive three years to serve in each case with the sentences to run concurrently. Kingston was indicted by a Hancock County Grand Jury on September 7, 1999. She signed a waiver of arraignment and entry of plea and entered a plea of not guilty on October 14, 1999. The trial was held on August 15-17, 2000, and at its conclusion, the jury found Kingston guilty. She was sentenced to life imprisonment on August 17, 2000. Kingston filed a motion for JNOV or in the alternative a new trial on August 23, 2000. The court entered an order denying the motion on September 22, 2000. From this order, Kingston filed a notice of appeal on October 20, 2000.

## DISCUSSION

*Failure to Grant Motion for JNOV or a New Trial*

¶8.    Kingston argues that the trial court erred in denying her motion for a JNOV or in the alternative a new trial because the verdict was against the overwhelming weight of the evidence. Kingston argues that Gainey's testimony is neither reliable, trustworthy, nor credible for several reasons. First, the entire case rests on the immunized testimony of Gainey who pled to lesser counts. Second, Gainey's first statement was given while he admittedly was under the influence of drugs. Third, Gainey's drug use prevented him from knowing who committed the murder. Fourth, Gainey avoided changing his original statement to elude penalties for perjury.

¶9.    In reviewing denials of a JNOV motion

> [T]his Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Pruitt v. State*, 807 So.2d 1236, 1243 (Miss. 2002). In contrast, our standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Id.* (quoting *Dudley v. State,* 719 So.2d 180, 182 (Miss. 1998)). Sufficient evidence exists in the record to justify the jury's verdict because Kingston was convicted pursuant to independent evidence as well as Gainey's testimony. The independent evidence consisted of the following: Kingston attempted to

4

cover up the murder by giving the police false information and lying about Cowan's whereabouts; she attempted to impede the police investigation by seeking a temporary injunction against the police department; she never reported her husband missing; she never called the police to inquire about the investigation; she and Cowan were separated and Cowan had retained a lawyer to file for divorce; and she admitted during her testimony that on a prior occasion she had moved out of the house with Cowan when she was angry in order to avoid killing him.

¶10. In addition to the independent evidence presented, the jury heard the testimony of both Gainey and Kingston. They found Gainey to be the more credible witness. That was their right. The jury was informed about Gainey's alleged drug use, the plea agreement he entered with the State, and the fact that if Gainey changed his statement, he could face penalties for perjury.

¶11. The jury is charged with weighing the conflicting evidence of witnesses. *Pearson v. State*, 428 So.2d 1361, 1364 (Miss. 1983). Furthermore, this Court has stated:

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983). Here, the jury weighed the evidence and found Gainey's testimony believable. We find that no error was committed and that this issue is without merit.

*Jury Instructions*

5

¶12. Kingston argues that the court erred by failing to grant jury instructions D-5 and D-6. Kingston avers that the jury was allowed to deliberate without proper instructions covering the special circumstances surrounding the uncorroborated and suspicious immunized testimony. Her concern is that because instructions D-5 and D-6 were not given the jury could have been confused since she and Gainey both claimed to be the accomplice and not the murderer. Moreover, Kingston complains that instruction S-4 does not specifically name Gainey in the body of the instruction.

¶13. Proposed Jury Instruction D-5 states:

> The Court instructs the jury that Robert [sic] Grey Gainey in cutting his deal to testify against the defendant he pled guilty as an accessory after the fact to the murder of Herman Cowan and got the State to reduce the charge of murder against him to accessory after the fact in an unrelated murder charge receiving on of total three years on recommendation of the State. By entering these guilty pleas and being sentenced he has become immunized against in future prosecution on a charge of murder in either homicide.
>
> The Court instructs the jury that it should weigh the testimony of an immunized witness with great care, caution, suspicion, and distrust.

¶14. Proposed Jury Instruction D-6 states:

> By his testimony Robert [sic] Grey Gainey claims to be an accomplice to the crime charged against defendant Patricia Ann Kingston.
>
> The Court instructs the jury to weigh the testimony of an accomplice with great care, caution, suspicion, and distrust.

¶15. As given by the trial court, Jury Instruction S-4 states:

> The Court instructs the jury that a person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care and suspicion. You may give it such weight and credit as you deem it is entitled.

¶16. Kingston cites to *Van Buren v. State*, 498 So.2d 1224 (Miss. 1986) which is not supportive of her contention that the court erred in failing to grant jury instructions D-5 and D-6. Kingston suggests

6

that *Van Buren* holds that the granting of the accomplice cautionary instruction by a trial judge is discretionary and not absolute. *Id.* at 1229. While this is true, Kingston has failed to present case law which exhibits how the trial judge committed reversible error in refusing to give jury instructions D-5 and D-6.

¶17.    Furthermore, she cites *Wheeler v. State*, 560 So. 2d 171, 174-77 (Miss. 1989); *Lee v. State*, 529 So.2d 181, 183 (Miss. 1988); *Groseclose v. State*, 440 So.2d 297 (Miss. 1983); and *Barr v. State*, 359 So. 2d 334, 338 (Miss. 1978), to instruct the Court that a jury should be fully and fairly instructed or the trial court has committed reversible error. The cases cited by Kingston are not instructive at all as to the resolution of this case. Moreover, she has not cited any other applicable authority in her brief. As previously stated, failure to cite authority in support of an assignment of error is a procedural bar. *McClain v. State*, 625 So.2d 774, 781 (Miss. 1993). This issue is without merit.

## CONCLUSION

¶18.    For the above stated reasons, we affirm the trial court's judgment.

¶19. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.**