# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-00540-SCT

*JESSIE J. CANNON*

**v.**

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                      01/27/2003
TRIAL JUDGE:                           HON. C. E. MORGAN, III
COURT FROM WHICH APPEALED:    WEBSTER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        RONALD STEPHEN WRIGHT
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                           BY: CHARLES W. MARIS, JR.

DISTRICT ATTORNEY:              DOUG EVANS
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                         JUDGMENT OF THE COURT OF APPEALS
                                           REVERSED, AND CONVICTION AND
                                           SENTENCE AFFIRMED - 04/14/2005

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.    Jessie J. Cannon was convicted of felony DUI, third offense, in Webster County Circuit Court. He appealed, and the appeal was assigned to the Court of Appeals, which reversed the conviction and remanded the case for a new trial. A divided Court of Appeals held that the trial court erred: (1) by not granting a sua sponte limiting instruction concerning the testimony of an officer regarding Cannon's performance on a portable breath test, and (2) because the verdict was contrary to the law and the overwhelming weight of the evidence. ***Cannon v. State,***

2004 WL 1381725 (Miss. Ct. App. 2004). The State filed a motion for rehearing with the Court of Appeals, which was denied. We granted the State's petition for a writ of certiorari. The State asserts that the Court of Appeals' decision conflicts with prior decisions of this Court. We agree.

## FACTS[1]

¶2. On December 15, 2001, Cannon was stopped by Officer Keith Crenshaw of the Eupora Police Department after he was observed traveling south in the northbound lane of Highway 9, causing another automobile to pull over onto the shoulder to avoid a collision. Cannon, a diabetic, testified that at the time of the incident, he was en route to a nearby Shell station to get some orange juice and honey. Feeling nervous, weak and "sort of woozy," he had tested his blood sugar and found it to be dangerously low just prior to leaving his house.

¶3. When asked to show his driver's license, Cannon advised Officer Crenshaw that it had been suspended for driving under the influence of alcohol. He then asked if he could speak to another Eupora police officer, Perry Yates. Officer Yates arrived shortly thereafter, accompanied by a reserve officer, Shane Box.

¶4. Cannon was subjected to a portable breath test at the scene. No other field sobriety tests were given. The three officers presented testimony about Cannon's demeanor at the time of the stop. They testified that his eyes were bloodshot and he smelled like alcohol. Officer Yates noted that his stance and speech were normal. Officer Crenshaw found his speech slightly slurred.

---

[1] The facts are taken directly from the Court of Appeals' decision. ***Cannon v. State***, 2004 WL 1381725, at *1-2 (Miss. Ct. App. 2004).

2

¶5.     None of the officers involved with Cannon's arrest had ever observed an individual suffering a hyperglycemic incident. Cannon's physician, Dr. James Booth, testified that a blood sugar reading of 21, which Cannon had recorded prior to the incident, was extremely dangerous and would produce symptoms which could be mistaken for intoxication. He further stated that changes in a diabetic's glucose levels can produce ketones, leaving an acetone smell on the breath, which can be confused with alcohol.

¶6.     After the initial stop, Cannon was transported to the Webster County Sheriff's Office, where he submitted to testing on the Intoxilyzer 5000 machine. He blew into the machine three or four times, but was unable to blow long enough to complete the test or generate an accurate reading. By his own admission, Cannon became angry and argumentative at the sheriff's office when advised after his unsuccessful attempts to take the Intoxilyzer that he would not be released. Subsequently, Cannon was placed under arrest, charged with felony DUI and held overnight in jail.

¶7.     At the time of the incident, Cannon was in poor health. He had seen Dr. Booth several days previously, on December 10th, as well as on December 17th and 21st. In addition to diabetes, he suffered from an enlarged heart, congestive heart failure, high blood pressure and kidney problems. He was taking five different medications. He testified that he had not been drinking, stating that mixing alcohol with his various medications "will lock my kidneys, and it will throw my heart out."

¶8.     The State argues that the Court of Appeals erred in rendering its decision and raises the following contentions:

**I.       THE CIRCUIT COURT DID NOT ERR IN NOT GRANTING A LIMITING INSTRUCTION CONCERNING THE TESTIMONY OF OFFICER CRENSHAW.**

**II.      THE VERDICT OF THE JURY IS NOT CONTRARY TO THE LAW AND TO THE OVERWHELMING WEIGHT OF THE EVIDENCE IN THIS CASE.**

**LEGAL ANALYSIS**

**I.       Limiting Instruction**

¶9.     Before trial, Cannon filed a motion in limine which sought to prevent the admission of evidence that he had taken a portable breath test at the scene of the traffic stop.  The trial court ruled that the fact that Cannon submitted to a portable breath test would be admissible, but the trial court determined that the result of the test was inadmissible.  During the direct examination of Officer Crenshaw, a reference was made about the test but not the actual result. When Officer Crenshaw attempted to offer that information, the defense objected.  The following exchange transpired:

> Q: Okay.  And what happened then?
> A: At that time I called Perry to the scene, and he said he would be there in a few minutes.  And on Eupora 2 arrival, at that time I asked Mr. Cannon if he would submit to a portable intoxilizer test, and he said he would.  And I did submit him to that, and he run high enough on it that it -
> MR. WRIGHT [DEFENSE COUNSEL]: Objection, Your Honor.
> BY THE COURT: Sustained.

¶10.    The Court of Appeals held that the issue was not preserved for appeal because Cannon failed to request a cautionary instruction or mistrial.  However, the Court of Appeals further held:

> Procedural bar notwithstanding, once Crenshaw's testimony went beyond the parameters set in the motion in limine, the circuit judge should have given,

sua sponte, a specific limiting or cautionary instruction to the jury. *See Rose v. State*, 846 So.2d 276(¶ 4)(Miss.Ct.App.2002)(even though defendant charged with firearms violation not prejudiced by testimony that officers smelled marijuana burning in his car, trial judge should have issued, *sua sponte*, a limiting instruction concerning the marijuana smell).

*Cannon*, 2004 WL 1381725, at *3.

¶11. The State argues that the trial court had no affirmative duty to offer jury instructions sua sponte or to suggest instructions for the parties to consider. *King v. State*, 857 So.2d 702, 720 (Miss. 2003). The State distinguishes *Rose* from the case at bar. In *Rose*, the Court held that the officers' detection of a marijuana odor was admissible to show probable cause for stopping the defendant. *Rose,* 846 So.2d at 278. When Rose exited the vehicle, a cartridge fell to the ground, and one of the officers observed a gun stuck in the driver's seat. Rose's conviction for a convicted felon in possession of a firearm was affirmed on appeal. *Id.* In the case sub judice, Officer Crenshaw's testimony did not involve another crime, and there was no issue regarding the admissibility of the evidence.

¶12. The State further argues that the trial court did instruct the jury, before it retired to deliberate, that it was "to disregard all evidence which I excluded from consideration during the course of the trial." *See Cavett v. State,* 717 So.2d 722,729 (Miss. 1998) (there exists the presumption that jurors respect the law as they are instructed by the Court).

¶13. The Court of Appeals determined that *Holmes v. State,* 740 So.2d 952 (Miss. Ct. App. 1999), is analogous to the case at hand. In *Holmes*, the Court of Appeals held that the trial court erred in allowing testimony regarding a horizontal gaze nystagmus (HGN) test after having granted a motion to suppress that evidence. *Id*. at 959. The State contends that *Holmes*

5

can be distinguished as the issue there was the trial court's admission of evidence. Here, there was no issue regarding admissibility of evidence since the trial court sustained Cannon's objection.

¶14. In his dissenting opinion, Court of Appeals Judge Griffis stated:

> [P]rocedural bar ... prevents our review of this issue. Indeed, the defendant's attorney is not a mere spectator at the trial. The defendant's attorney, just as the prosecutor, must participate in the trial by offering objections or motions that are necessary to ensure a fair trial. As the majority correctly points out, this Court has previously held that "[t]he law of this State is quite clear that, in order to preserve an error of this nature for review on appeal, defense counsel must offer a mistrial motion after it is established that the evidence was, in fact, improper." *Jones v. State*, 724 So.2d 1066, 1069 (¶ 11) (Miss.Ct.App.1998) (citing *White v. State*, 532 So.2d 1207, 1216 (Miss.1988)).
>
> At that moment, the defense had a choice to (a) ask for a limiting instruction, which may again highlight the objectionable testimony; (b) move the court for a mistrial; or (c) do nothing and continue with the testimony. The defense chose the third option, and this choice waived the error for our appellate review.

*Cannon*, 2004 WL 1381725, at *5.

¶15. We find that, although reference was made to the result of the portable breath test, the actual result was not revealed. The defense objected before the officer could state the result of the test. The information that had been limited by the motion in limine did not come into evidence for the jury to hear. Further, the defense did not preserve the issue for appeal by failing to request a cautionary instruction from the trial court. The Court of Appeals erred in reversing the conviction on this assignment of error and remanding the case to the trial court.

## II. Overwhelming Weight of the Evidence

¶16. The Court of Appeals found that the verdict was against the overwhelming weight of the evidence. Specifically, the Court of Appeals held:

6

Looking, as we must, at all evidence in a light most consistent with the jury verdict, there is little in the record to support a guilty verdict in this case. No results were obtained from the Intoxilyzer 5000 tests administered at the sheriff's office. Cannon's speech was variously described as normal and only slightly slurred. The officers' testimony also included the ambiguous observations that his eyes were bloodshot and he smelled of alcohol. Despite the circuit court's ruling on Cannon's motion in limine, the jury further heard Officer Crenshaw's testimony about the results of the portable breath test given at the time of the traffic stop, erroneously admitted without a specific limiting or cautionary instruction.

There is, however, substantial evidence contrary to the State's case. Cannon denied drinking on the evening in question; indeed, he seemed acutely aware of the ramifications of mixing alcohol with the various prescription medications he was taking. Evidence was introduced that Cannon suffered from diabetes and other serious health problems. He had left his house to get orange juice and honey, which his doctor recommended when his glucose levels were too low. His physician testified that the symptoms of a sudden change in glucose levels in a diabetic can be mistaken for intoxication.

*Cannon*, 2004 WL 1381725, at *4.

¶17. The State contends that the Court of Appeals misapprehended the applicable law. The State relies on ***Kingston v. State***, 846 So.2d 1023 (Miss. 2003), in asserting that the Court of Appeals usurped the role of the jury. In ***Kingston***, we stated:

The jury is charged with weighing the conflicting evidence of witnesses. ***Pearson v. State***, 428 So.2d 1361, 1364 (Miss.1983). Furthermore, this Court has stated:

Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in

7

arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Groseclose v. State*, 440 So.2d 297, 300 (Miss.1983).

*Kingston*, 846 So.2d at 1026.

¶18.    In his dissenting opinion, Judge Griffis stated:

On the second issue, there was sufficient evidence before the jury to support the jury's verdict of guilty. Officer Crenshaw testified that he observed Cannon's vehicle cause another car to take evasive action to avoid a collision. When he stopped Cannon's vehicle, he learned that Cannon was driving while his license was suspended for driving under the influence. Officer Crenshaw testified that Cannon's speech was slurred. Also, Officer Crenshaw testified that he was familiar with and had experience with people suffering from diabetes and low blood sugar.

Cannon asked to speak to Officer Yates, and Cannon asked Officer Yates if the officer could "help him out with that particular DUI." Officer Crenshaw, Officer Yates and Reserve Officer Shane Box testified about Cannon's bloodshot eyes and that they detected the smell of alcohol on Cannon's breath. Officer Yates testified that he was of the opinion that Cannon was intoxicated.

The majority correctly states the testimony that Cannon presented in his defense. Nevertheless, there was sufficient evidence to present this case to the jury, which the court did. The jury considered the evidence and returned a verdict against Cannon, thereby rejecting Cannon's evidence and the evidence relied upon by the majority.

I am of the opinion that, accepting all of the evidence favorable to the State as true and giving the State all reasonable inferences flowing from that evidence, there was sufficient evidence to support the jury's verdict. As to the weight of the evidence, I find that the verdict was not so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice, which is required for this Court to disturb the jury's verdict on appeal. *See Herring v. State*, 691 So.2d 948, 957 (Miss.1997) (discussing the required standard of review).

*Cannon*, 2004 WL 1381725, at *5.

¶19. A motion for new trial challenges the weight of the evidence. *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id.*

¶20. This Court has held that a new trial will not be given unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose,* 440 So.2d at 300. However, if a jury verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial. *Collier v. State,* 711 So.2d 458, 461 (Miss. 1998).

¶21. In the case sub judice, the verdict is consistent with the weight of the evidence, and no new trial is warranted. The State asserts that reference to the possibility of confusing the alcohol odor with that of acetone, which can be present in episodes of hyperglycemia, is erroneous because Cannon claimed to be suffering from hypoglycemia, a low blood glucose incident. The State also points out, and as stated in Judge Griffis's dissent, Officer Yates testified that Cannon asked him for assistance with that particular DUI.

¶22. Officer Yates stated that Officer Crenshaw called him and requested his assistance because Cannon had requested Officer Yates come to where he was stopped. He testified that he had known Cannon for approximately 2 or 3 years. Officer Yates testified that when he arrived, Cannon talked to him and asked if he "could help him out with that particular DUI." Officer Yates testified that he could smell alcohol and observed bloodshot eyes. Cannon never told Officer Yates that he had a medical emergency nor did he request medical attention. Cannon was transported to the Webster County Sheriff's Office where he was tested on an intoxilizer.

¶23. Officer Crenshaw testified that when he stopped Cannon he asked for his driver's license. Cannon informed him that it was suspended for DUI. Cannon then asked Officer Crenshaw to see if Officer Yates could come to the scene. After Cannon talked with Officer Yates, Cannon was transported to the Webster County Jail. Officer Crenshaw testified that he detected the smell of alcohol on Cannon's breath. He observed bloodshot eyes and slight slurred speech, but Cannon spoke fairly well.

¶24. Dr. James Booth testified that he was Cannon's physician treating his diabetes. According to Cannon, his blood sugar level was 21 at the time he was stopped. However, Dr. Booth had no record of Cannon's blood sugar level when he saw him the next day and had no idea what it was when Cannon was arrested. When asked on cross by the State, Dr. Booth stated that a blood sugar level of 21 would be low, critically low. He stated that hyperglycemic is having too much sugar and hydpoglycemic is having too low sugar in the body. When asked by the defense, "the smell of a person who is in a [sic], having a diabetic hypoglycemic incident, would there be any odor." Dr. Booth responded, "**No that is in hyperglycemic**." (emphasis added).

¶25. Therefore, we find that the Court of Appeals erred in reversing the conviction on this assignment of error and remanding the case for a new trial court.

**CONCLUSION**

¶26. The Court of Appeals erred in reversing the judgment of the trial court. Therefore, the judgment of the Court of Appeals is reversed and rendered as discussed in the opinion above, and the judgment of the Webster County Circuit Court is affirmed.

**¶27. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF FELONY DUI AND SENTENCE OF FIVE (5) YEARS, WITH THE LAST TWO (2) YEARS POST-RELEASE, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TOGETHER WITH PAYMENT OF A FINE OF $2,000.00, ALL COSTS AND ATTORNEY FEES, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**