ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Lauderdale County Circuit Court found Derrick T. Williams guilty of capital murder, armed robbery, and theft of a motor vehicle. For his armed robbery conviction, the circuit court sentenced Williams to twenty years in the custody of the Mississippi Department of Corrections (MDOC). For capital murder, the circuit court sentenced Williams to life in the custody of the MDOC without the possibility of parole or probation. The circuit court ordered Williams’s sentence for armed robbery to run concurrently with Williams’s sentence for capital murder. For theft of a motor vehicle, Williams was sentenced to serve ten years in the custody of the MDOC, with the sentence to run consecutively to his sentences for armed robbery and capital murder. Aggrieved, Williams appeals and raises eight issues. After careful consideration, we find that Williams’s armed-robbery conviction, which was the basis for elevating the murder charge to capital murder, is contrary to the Fifth Amendment’s prohibition against double jeopardy. We, therefore, reverse and render as to Williams’s conviction for armed robbery. However, we find no merit to Williams’s other issues. Accordingly we affirm in part and reverse and render in part.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of August 20, 2008, Sandra Grace went to a BP gas station adjacent to 1-20 in Meridian, Mississippi. Because Grace routinely visited the store, she noticed some things were out of the ordinary before she went inside. As she looked through the door, Grace realized the coffee pot, pizza machine, and store sign were on, but the store clerk was not at the counter. Grace went across the street and asked someone at another store whether she had seen the store clerk who was typically in the gas station. When she heard that no one had seen the store clerk that morning, Grace went outside and used a pay phone to call law-enforcement authorities.
*327 ¶ 3. Officer Otha Sanders with the Meridian Police Department responded to the call. He met Sergeant David Ladin and Grace at the BP gas station. Officer Sanders also saw that the coffee pot was on, but there was no coffee in it. Additionally, he saw that the pizza machine was on. He later testified that it was unusual for a gas station to serve pizza at that time of the morning. When he and Sergeant La-din realized the door to the gas station was locked, they called a locksmith.
¶ 4. Once the locksmith unlocked the door, Officer Sanders and three other officer went inside the gas station. After going inside the men’s restroom, Officer Sanders’s superior officer ordered everyone to leave the gas station. The officers had discovered Mohammed Alnazaili’s body in the restroom. In an extraordinarily bloody crime scene, Alnazaili’s hands and feet had been bound with duct tape. The officers secured the perimeter of the gas station and waited for additional officers to arrive.
¶ 5. During the subsequent investigation, authorities discovered that the cash register had been left open, and there was no paper money inside it. Authorities also found a computer monitor in a back room of the BP gas station. The computer contained a digital video feed of the BP gas station’s surveillance system. Detective Joe Hoadley, the lead investigator in the case, and other officers with the Meridian Police Department were able to watch the events that unfolded during the previous night on the video feed.
¶ 6. That night, Alnazaili was behind the counter when Izóla McMillon, who had been working as an employee at the gas station for a couple of weeks, came into the gas station and joined him behind the counter. McMillon and her boyfriend, Williams, had been staying with one of Williams’s relatives in Meridian for approximately one month. McMillon later explained that, on the same date that Alna-zaili was killed, Williams’s relative had informed the couple that they could no longer stay with him because they had not paid any rent. McMillon and Williams planned to return to Chicago, Illinois, but they did not have any money for their return trip.
¶ 7. The video-surveillance footage further showed that at approximately 10:00 p.m., Williams also went inside the gas station. Williams bought a pack of cigarettes from Alnazaili. However, Williams then removed a pistol from a bag he was carrying. The gas station’s video-surveillance footage clearly shows Williams hitting Alnazaili with the pistol. Alnazaili fell to the floor, and Williams went behind the counter. While McMillon locked the doors, Williams hit Alnazaili with the pistol at least two more times and dragged Alna-zaili to the men’s restroom. McMillon later testified that she could hear Alnazaili screaming while she mopped up his blood from the floor.
¶ 8. Williams left Alnazaili bound and screaming in the bathroom, where Alnazai-li bled to death. McMillon took $1,100 from the cash register. She also took Alnazaili’s car keys. After McMillon locked the store, she and Williams fled in Alnazaili’s car.
¶ 9. McMillon and Williams made it to Chicago. Authorities in Chicago discovered a burned car that was later identified as Alnazaili’s. McMillon and Williams were eventually arrested and extradited to Mississippi, where they were indicted for capital murder, armed robbery, and theft of a motor vehicle. Williams pled not guilty to all three charges. To avoid trial, McMillon pled guilty to manslaughter and armed *328 robbery.[1] She also agreed to testify against Williams.
¶ 10. At trial, the prosecution called six witnesses: Grace; Officer Sanders; Detective Hoadley; Detective Robert McVicker of the Chicago Police Department; McMil-lon; and Dr. Adele Lewis, the forensic pathologist who performed the autopsy on Alnazaili’s body. The prosecution also submitted the video-surveillance footage into evidence. Williams chose not to testify. He rested without calling any witnesses. As previously mentioned, the jury found him guilty of capital murder, armed robbery, and theft of a motor vehicle. Williams appeals pro se.
ANALYSIS
I. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 11. Williams claims he received ineffective assistance of counsel. Specifically, he claims his attorney “failed to investigate the case and summon all witnesses who could have given critical testimony from personal knowledge of the events.” However, Williams fails to name one witness that he asked his attorney to call. Similarly, Williams fails to discuss how any such witness would have aided his case.
¶ 12. We address the merits of an ineffective-assistance-of-counsel claim on direct appeal only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration- of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). The parties have not stipulated that the record is adequate. Williams’s claim would require his trial attorney’s explanation as to whether Williams informed him that there were witnesses who could aid his defense. In the event that Williams did inform his trial attorney of witnesses on his behalf, Williams’s trial attorney should have an opportunity to explain his reasoning as to why he chose not to call those witnesses. Williams’s trial attorney has not had either opportunity. Accordingly, the record is not adequate to adjudicate Williams’s claim on direct appeal. Under the circumstances, we must affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Id. Stated differently, Williams may raise this claim in a motion for post-conviction relief, if he so chooses.
II. INDICTMENT
¶ 13. Next, Williams claims the capital-murder indictment was defective because it did not list the “underlying elements of armed robbery under that count.” Williams’s argument is based on State v. Berryhill, 703 So.2d 250, 258 (¶ 34) (Miss.1997), in which the Mississippi Supreme Court held that an indictment for capital murder based on the commission of burglary during the murder must “assert with specificity” the particular acts comprising the burglary. We are mindful that whether or not an indictment is defective is a question of law which we must review de novo. Gilmer v. State, 955 So.2d 829, 836 (¶ 24) (Miss.2007) (citation omitted).
¶ 14. The supreme court has “declined to extend the holding in Berryhill to capital crimes undergirded by robbery.” *329 Milano v. State, 790 So.2d 179, 186 (¶ 29) (Miss.2001) (citing Turner v. State, 732 So.2d 937, 948 (¶ 40) (Miss.1999)). All of the essential elements comprising an armed robbery need not be elaborated upon in an indictment charging capital murder because, unlike burglary, armed robbery does not include an essential element of an intent to commit some other crime. Id. at 187 (¶ 29). Accordingly, we find no merit to this issue.
III. DOUBLE JEOPARDY
¶ 15. Williams claims his conviction for both armed robbery and capital murder violate his Fifth Amendment prohibition against double jeopardy because armed robbery was the underlying felony that elevated the murder charge to capital murder. Commendably, the State admits concern that Williams’s argument has some merit. After careful consideration, we agree that Williams’s conviction and sentencing for both armed robbery and capital murder with armed robbery as the underlying felony qualifies as a violation of Williams’s Fifth Amendment right against double jeopardy.
¶ 16. Williams did not raise this issue at trial. Even so, the prohibition against double jeopardy is a fundamental constitutional right that “may be excepted from procedural bars which would otherwise prohibit their consideration.” Fuselier v. State, 654 So.2d 519, 522 (Miss.1995) (quoting Luckett v. State, 582 So.2d 428, 430 (Miss.1991)). See also Rowland v. State, 42 So.3d 503, 508 (¶¶ 13-14) (Miss.2010) (expressly overruling prior Mississippi cases which held that a double-jeopardy claim may be procedurally barred if not raised at trial). Consequently, Williams’s failure to raise the issue at trial does not bar our consideration of the issue on appeal.
¶ 17. An “initial conviction and sentence for both felony murder and the underlying felony violatefs] the third aspect of the Double Jeopardy Clause, the protection against ‘multiple punishments for the same offense’ imposed in a single proceeding.” Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). The indictment against Williams accused him of murdering Alnazaili “while engaged in the commission of the felony crime of [ajrmed [rjobbery.” Because Williams was also convicted of and sentenced to twenty years for armed robbery—the underlying felony that elevated the murder charge to capital murder— Williams has been subjected to a double jeopardy violation.
¶ 18. That Williams’s sentences for capital murder and armed robbery were set to run concurrently is of no moment. As the Supreme Court has stated, “the second conviction, even if it results in no greater sentence, is an impermissible punishment.” Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The proper remedy is to vacate Williams’s conviction and sentence for armed robbery while leaving his conviction and sentence for capital murder intact. See Jordan v. State, 728 So.2d 1088, 1100 (¶58) (Miss.1998).
IV. SUFFICIENCY OF THE EVIDENCE
¶ 19. Williams claims the evidence against him is insufficient to convict him of armed robbery and- capital murder. We have already reversed Williams’s armed-robbery conviction based on double jeopardy. Accordingly, we restrict our analysis to Williams’s conviction of capital murder.
¶ 20. Williams last challenged the sufficiency of the evidence in his motion for a judgment notwithstanding the verdict (JNOV). “A motion for a [JNOV] is a *330 challenge to the sufficiency of the evidence.” Gilbert v. State, 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As the Mississippi Supreme Court has stated:
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof' standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).
¶ 21. “The killing of a human being without the authority of law by any means or in any manner shall be murder ... [wjhen done with deliberate design to effect the death of the person killed, or of any human being.” Miss.Code Ann. § 97-3 — 19(l)(a) (Rev.2006). “The killing of a human being without the authority of law by any means or in any manner shall be capital murder ... [wjhen done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery_” Miss.Code Ann. § 97-3-19(2)(e). Williams argues there is insufficient evidence to convict him of capital murder because McMillon testified that they did not plan to kill Alnazaili. According to Williams, the evidence was only sufficient to convict him of manslaughter. We disagree.
¶ 22. As the State notes, malice is not a necessary element of capital murder as set forth in section 97-3-19(2)(e). “There is nothing about [section 97-3-19(2)(e) ] which requires any intent to kill when a person is slain during the course of a robbery. It is no legal defense to claim accident, or that it was done without malice.” Griffin v. State, 557 So.2d 542, 549 (Miss.1990). Viewing the evidence in the light most favorable to the prosecution, the jury heard testimony that Williams and McMillon needed money to return to Chicago because they no longer had any place to live in Meridian. McMillon testified that they went to the BP gas station to try to get money so they could return to Chicago. The video-surveillance footage showed Williams buying a pack of cigarettes from Alnazaili. The video-surveillance footage also showed Williams removing a pistol from a bag that he had brought into the BP gas station. The jury saw Williams hit Alnazaili with that pistol. Williams then went behind the counter and used the pistol to hit Alnazaili two more times. Williams dragged Alnazaili to the restroom, while McMillon locked the doors to the BP gas station and took the money *331 out of the cash register. The video-surveillance footage also showed Williams rifling through the area of the cash register. After Williams and McMillon left in Alna-zaili’s car, Alnazaili bled to death in the restroom. McMillon testified that Williams told her to take the keys to Alna-zaili’s car.
¶ 23. Although there was no direct evidence that Williams and McMil-lon expressly intended to rob Alnazaili, intent can also be demonstrated by a defendant’s actions and the surrounding circumstances. Moody v. State, 841 So.2d 1067, 1093 (¶ 77) (Miss.2003). Williams brought a pistol into a BP gas station and beat Alnazaili so badly that he bled to death. The jury heard evidence that the couple needed money. The jury could infer that Williams incapacitated Alnazaili for the purpose of removing an obstacle to the money that the couple needed. Furthermore, McMillon testified that Williams told her to take Alnazaili’s keys. “[I]t is well established that ‘any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.’ ” Sneed v. State, 31 So.3d 33, 41 (¶ 24) (Miss.Ct.App.2009) (quoting Jones v. State, 710 So.2d 870, 874 (¶ 15) (Miss.1998)). Viewed in the light most favorable to the prosecution, reasonable people could certainly conclude that the prosecution proved every necessary element beyond a reasonable doubt to convict Williams of capital murder because he killed Alnazaili during the commission of an armed robbery. We find no merit to this issue.
V. WEIGHT OF THE EVIDENCE
¶ 24. Next, Williams claims that the jury’s verdict is contrary to the overwhelming weight of the evidence. As we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). The supreme court has further instructed that when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote, internal citations, and quotations omitted).
¶ 25. For the reasons discussed in our analysis of the sufficiency of the evidence, we conclude that the jury’s verdict is not contrary to the overwhelming weight of the evidence. That is, viewing the evidence in the light most favorable to the jury’s verdict, it would not sanction an unconscionable injustice to allow the jury’s verdict to stand. We find no merit to this issue.
*332 VI. JURY INSTRUCTIONS
¶ 26. Williams laments that the circuit court “either denied each instruction submitted by [Williams] or convinced [his] defense counsel to withdraw such instruction.” He specifically notes the circuit court refused “the first [four] instructions” that Williams submitted. According to Williams, he was not allowed to submit “one single jury instruction setting out his theory of the case.” According to Williams, “[t]he jury was instructed on the [circuit] court’s theory of the case rather than on [his own] theory.” Our standard of review is as follows:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Agnew v. State, 783 So.2d 699, 702 (¶ 6) (Miss.2001) (citing Humphrey v. State, 759 So.2d 368, 380 (Miss.2000)).
1127. The record reflects that Williams’s defense counsel submitted twenty-seven prospective jury instructions.[2] There is no evidence the circuit court “convinced” Williams’s defense counsel to withdraw any of those twenty-seven prospective jury instructions. Instead, the record indicates that Williams’s defense counsel withdrew twenty of those twenty-seven jury instructions with no prompting by the circuit court.
¶ 28. The circuit court refused Williams proffered jury instruction designated as D-l because it was a peremptory instruction. The circuit court gave Williams’s jury instruction that was designated as D~ 4, which reads as follows:
The Court instructs the Jury that the indictment in this case is nothing more than a formal accusation or charge against the accused and is [sic] it is not any evidence whatsoever of the guilt of the accused. You must not consider the indictment as any evidence of the alleged guilt of ... Williams, or draw any inference of guilt from it. As I told you earlier, the accused’s innocence is always presumed!,] and this presumption continues unless overcome by the evidence, which convinces you of the guilt of the accuse beyond a reasonable doubt.
Additionally, the circuit court gave Williams’s jury instructions designated as D-8 and D-13. Instruction D-8, which was re-designated as instruction C-12, instructed the jury that the “strength or weakness of the evidence ... is not measured by the number of witnesses called to testify.” Instruction D-13, re-designated as instruction C-13, instructed the jury that it was not permitted to draw any unfavorable inferences from the fact that Williams chose not to testify. Accordingly, Williams’s claim that the circuit court refused every jury instruction that his attorney submitted is patently incorrect.
¶ 29. The circuit court refused proffered jury instruction D-5 because it attempted to define reasonable doubt. Proffered jury instruction D-5 reads:
*333 The Court instructs the Jury that that [sic] you are bound, in deliberating upon this case, to give ... Williams, [sic] the benefit of any reasonable doubt that arises out of the evidence or lack of evidence in this case. There is always reasonable doubt of the defendant’s guilt when the evidence simply makes it probable that ... Williams is guilty. Mere probability of guilt will never call for you to convict ... Williams. It is only when, after examining the evidence on the whole, you are able to say on your oaths, beyond a reasonable doubt, that ... Williams is guilty that the law will permit you to find him guilty. You might be able to say that you believe beyond a reasonable doubt, that he is guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that ... Williams is guilty, it is your sworn duty to find ... Williams, “Not Guilty.”
“It is a long-standing rule that defining ‘reasonable doubt’ for the jury is improper.” Colburn v. State, 990 So.2d 206, 217 (¶ 35) (Miss.Ct.App.2008). Proffered jury instruction D-5 clearly attempts to define reasonable doubt, stating: “There is always reasonable doubt of the defendant’s guilty when the evidence simply makes it probable that ... Williams is guilty.” “The Mississippi Supreme Court has repeatedly and consistently asserted that reasonable doubt defines itself.” Lett v. State, 902 So.2d 630, 638 (¶ 27) (Miss.Ct.App.2005) (citations and quotations omitted). Instructions that attempt to define reasonable doubt are prohibited because, among other reasons, such instructions tell “jurors that they should be able to state a reason why they have a doubt ... [; however], in our jurisprudence, jurors are never required to articulate any explanation of their decision.” Id. at (¶ 28).
¶ 30. The circuit court refused proffered jury instruction D-16 because it was cumulative of jury instruction D-4. Proffered jury instruction D-16 reads:
The Court instructs the Jury that your verdict should be based solely upon the evidence presented in this trial and the law as stated to you by this Court. You must not allow yourselves to be biased against ... Williams because of the fact that he has been arrested and charged with the offenses of murder, armed robbery, and auto theft; or because an indictment has been filed against him or because he is standing trial today. None of these facts [are] evidence, and you are not permitted to infer or to speculate from any or all of them that he is more likely to be guilty or innocent.
The circuit court correctly held that proffered jury instruction D-16 was cumulative of jury instruction D-4, which the circuit court gave. As quoted above, jury instruction D-4 was substantially the same as proffered jury instruction D-16. It was within the circuit court’s discretion to refuse a jury instruction that was “covered fairly elsewhere in the instructions.” Agnew, 783 So.2d at 702 (¶ 6).
¶ 31. Finally, the circuit court refused proffered jury instruction D-26, which reads:
The Court instructs the jury that the strength or weakness of the evidence offered in this case is not measured by the number of documents, items[,] or things offered into evidence. You must consider the evidence as a whole and determine what credibility, if any, you will give to each and every piece of evidence.
The circuit court refused proffered jury instruction D-26 because it was cumulative of other jury instructions that were given. Jury instruction C-l informed the jury that it was its “exclusive province ... to determine what weight and credibility will be assigned [to] the testimony and sup *334 porting evidence of each witness.” As stated above, jury instruction D-8, which was re-designated as jury instruction C-12, instructed the jury that the “strength or weakness of the evidence ... is not measured by the number of witnesses called to testify.” Consequently, the substance of proffered jury instruction D-26 was covered by other jury instructions.
¶ 82. Reviewing each of the proffered jury instructions the circuit court refused, we find no merit to Williams’s claims. Williams’s assertion the circuit court refused all of his proffered jury instructions is patently false. Moreover, in each instance that the circuit court refused one of Williams’s jury instructions, the circuit court acted well within its discretion to do so. We find no merit to this issue.
VII. SENTENCING
¶ 38. In this issue, Williams claims the circuit court erred when it sentenced him to life without the possibility of parole without first conducting a sentencing hearing. According to Williams, the circuit court should have considered sentencing Williams to life with the possibility of parole instead of life without the possibility of parole. Williams bases his argument on the following statutory language:
Upon conviction ... of guilt of a defendant of capital murder ... the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the issue of the imposition of the penalty.... In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitutions of. the United States or of the State of Mississippi. The [S]tate and the defendant and/or his counsel shall be permitted to present arguments for or against the sentence of death.
Miss.Code Ann. § 99-19-101(1) (Rev.2007).
¶ 34. Mississippi Code Annotated section 97-3-21 (Rev.2006) provides:
Every person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in [Mississippi Code Annotated section] 47-7~3(l)(f) [ (Rev. 2011) ].
However, section 47-7-3(l)(f) sets forth that “[n]o person shall be eligible for parole who is charged, tried, convicted[,] and sentenced to life imprisonment under the provisions of [s]ection 99-19-101.” According to the supreme court, “although under the relevant code provisions, while there is the apparent necessity of a choice between death, life, and life without parole, in reality there is really only a choice between death and life without parole in the capital case in this context.” Pham v. State, 716 So.2d 1100, 1103 (¶21) (Miss.1998).
¶ 35. In this case, the prosecution did not seek the death penalty. “Obviously, if the State is not seeking the death penalty, the only possible sentence for conviction of capital murder committed after July 1, 1994, the effective date of [section] 47-7-3, *335 is life without parole.” Id. The supreme court went on to hold that, under the circumstances, a circuit court “may impose the only possible sentence without formally returning the matter to the jury for sentencing.” Id. Consequently, we find that the circuit court did not err when it sentenced Williams to life without the possibility of parole — the only possible sentence Williams could have received because the prosecution did not seek the death penalty. Accordingly, we find no merit to this argument.
VIII. CUMULATIVE ERRORS
¶ 36. Finally, Williams claims that the cumulative errors in this case require that this Court reverse his convictions and remand this matter for a new trial. Williams is correct that “individual errors, not reversible in themselves, may combine with other errors to make up reversible error.” Wilburn v. State, 608 So.2d 702, 705 (Miss.1992) (citing Hansen v. State, 592 So.2d 114, 142 (Miss.1991)). We have found that Williams’s armed-robbery conviction is a violation of the Fifth Amendment’s prohibition against double jeopardy because it was the underlying felony that undergirded his capital murder conviction, and we reverse and render on that count. However, we have found no other errors in this case. It follows that there is no merit to this issue.
CONCLUSION
¶37. We affirm Williams’s convictions for capital murder and theft of a motor vehicle. However, we reverse Williams’s conviction for armed robbery and render a judgment of acquittal regarding the armed-robbery charge.
¶ 38. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT II, CAPITAL MURDER, AND SENTENCE OF LIFE WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND COUNT III, THEFT OF A MOTOR VEHICLE, AND SENTENCE OF TEN YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. THE JUDGMENT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF TWENTY YEARS TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT II IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.

. McMillon testified that she expected to be sentenced to two consecutive twenty-year sentences after Williams's trial.

. We are mindful of the six-substantive-jury-instruction rule found in Rule 3.07 of the Uniform Rules of Circuit and County Court, which provides:
At the conclusion of testimony, the attorneys must select no more than six jury instructions on the substantive law of the case from the instructions prefiled and present them to the judge. The court, for good cause shown, may allow more than six instructions on the substantive law of the case to be presented.